In the

# United States Court of Appeals

### For the Seventh Circuit

Nos. 08-2688 & 08-2823

KATHLEEN RYL-KUCHAR,

*Plaintiff-Appellee/*
*Cross-Appellant,*

*v.*

CARE CENTERS, INCORPORATED, an Illinois corporation,
individually and as plan administrator of the Care Centers
Employees Health Insurance Plan,

*Defendant-Appellant/*
*Cross-Appellee.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 3223—**James F. Holderman,** *Chief Judge.*

ARGUED APRIL 17, 2009—DECIDED MAY 11, 2009

Before FLAUM, EVANS, and WILLIAMS, *Circuit Judges.*

EVANS, *Circuit Judge.* Kathleen Ryl-Kuchar has been a
busy woman these last few years. Since giving birth to
triplets in the summer of 2003 she has been locked in a
struggle with her former employer, Care Centers, Incorpo-

rated, over the retroactive termination of her health insurance. With any luck, though, we can put this belabored matter to rest—and get everyone on to bigger and better things. The case started out with a number of claims, but all we have left at this point is Ryl-Kuchar's action under the Family and Medical Leave Act. Care Centers appeals from the district court's decision denying judgment notwithstanding the verdict after the jury found in favor of Ryl-Kuchar.

Ryl-Kuchar began working for Care Centers in 1985 when she was 15 years old. In the beginning she was only a part-time dishwasher. But she worked her way up through the ranks, finally landing the salaried position of dietary consultant, which she held in 2002. Towards the end of that year Ryl-Kuchar discovered she was pregnant, and soon thereafter that she was carrying triplets. She relayed this information to a worker in the human resources department in 2003, who in turn told Ryl-Kuchar that she could take up to 12 weeks of FMLA leave. But Ryl-Kuchar didn't seize the opportunity just yet—she wasn't due until late summer, after all.  Instead, she maintained her normal schedule until mid-May when, being "too big to fit behind [the steering] wheel" of her car, she began to work from home. Even then she wasn't on FMLA leave: she was still working; she performed her usual duties; and the arrangement had the blessing of Chief Operating Officer Mark Steinberg. Yet the number of hours she put in dipped to below 35 per week, which would be critical to how things played out in the future.

On July 17, 2003, Ryl-Kuchar gave birth to three healthy boys. After a short stay in the hospital, she returned home and, amazingly, got right back to work. With the

help of her sisters, she was able to make it through July. Once they left, however, the task of caring for three infants all by herself was, understandably, just too much. So Ryl-Kuchar commenced her FMLA leave with the intent to resume work in the fall. By the time late September rolled around, though, she decided she needed much more time with her children and would have to sacrifice her job. She resigned on October 1.

Everything went fine until mid-November. Then suddenly Ryl-Kuchar's health insurance was retroactively cancelled with an effective date of June 15—a month before she gave birth, and naturally a time when the medical bills were piling up. Ryl-Kuchar didn't realize this turn of events until early 2004, when her bills started to come back unpaid. What had happened, it turns out, is that the employee benefits association affiliated with Care Centers, CCS Veba, had determined that Ryl-Kuchar became a part-time employee in June when she was working from home, thereby losing eligibility for health insurance.

In the lawsuit that followed, Ryl-Kuchar collected evidence to show that the real reason for the cancellation was her decision to take FMLA leave. The first obstacle was imputing the action to Care Centers, since CCS Veba was ostensibly a separate organization. But Ryl-Kuchar pointed out that the plan administrator for CCS Veba was married to the owner of Care Centers; CCS Veba was referred to as the "insurance department" of Care Centers; and the organizations shared the same facilities. With this in place, she moved on to motive. She noted that Care Centers was concerned with rising health care costs, as evidenced by an article in the company newsletter, and that the claim

that she became a part-time employee in June had no basis in fact. Even though she may have worked less than 35 hours per week during that stretch of time, she remained a salaried employee, and her pay remained the same. It was only *after* Ryl-Kuchar took FMLA leave that CCS Veba—or Care Centers, depending on one's perspective—audited her payroll records and found there had been a "mistake." With this and other evidence, Ryl-Kuchar pressed both interference and retaliation claims at trial. She argued that Care Centers interfered with her FMLA right to continued health insurance and that it did this in retaliation for her decision to go on leave.

The FMLA entitles an employee to 12 weeks of leave every year for certain life events. *Pirant v. United States Postal Service*, 542 F.3d 202, 206 (7th Cir. 2008). These include the birth and care of a child, as well as a "serious health condition" that renders the employee unable to perform her job. 29 U.S.C. § 2612(a)(1)(D). Incapacity due to pregnancy is a "serious health condition." 29 C.F.R. § 825.114(a)(2)(ii); *Aubuchon v. Knauf Fiberglass GmbH*, 359 F.3d 950, 951 (7th Cir. 2004). If the employee is insured under a group health plan, like Ryl-Kuchar was, the FMLA requires her employer to maintain the coverage while she is out on leave. 29 U.S.C. § 2614(c)(1).

To prevail on her interference claim, Ryl-Kuchar had to show that: (1) she was eligible for FMLA protection; (2) Care Centers was covered by the FMLA; (3) she was entitled to FMLA leave; (4) she provided sufficient notice of her intent to take leave; and (5) Care Centers denied her benefits to which she was entitled (in this case, continued health insurance). *Smith v. Hope School*, 560 F.3d 694,

699 (7th Cir. 2009). As for retaliation, since Ryl-Kuchar opted for the direct method of proof, she was only required to show that Care Centers retroactively cancelled her health insurance "to punish her for requesting or taking FMLA leave." *Id.* at 702.

The jury found that Ryl-Kuchar had carried her burden, and it awarded her just over $30,000 in damages (the total amount of her unpaid medical bills). After denying Care Centers's motion for judgment notwithstanding the verdict, the district court awarded prejudgment interest and liquidated damages (the norm in FMLA cases, *see* 29 U.S.C. § 2617(a)(1)(A)), bringing the total up to over $85,000.

Care Centers asks us to reverse the district court's decision denying its motion for judgment notwithstanding the verdict. We review this decision *de novo*, *Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 567 (7th Cir. 1995), asking "whether the evidence presented, combined with all reasonable inferences permissibly drawn there-from, is sufficient to support the verdict when viewed in a light most favorable to the party against whom the motion is directed," *Haley v. Gross*, 86 F.3d 630, 632 (7th Cir. 1996). *See also Lasley v. Moss*, 500 F.3d 586, 590 (7th Cir. 2007). In other words, a trial court should overturn a verdict only where the evidence supports but one conclusion—the conclusion *not* drawn by the jury. *Pierce*, 65 F.3d at 568. This standard is tough; Care Centers is no match.

Let's start with the retaliation claim. Certainly—and this applies to the interference claim as well—there was ample evidence to conclude that CCS Veba was just an arm of Care Centers, not a separate entity. So the jury was within

its rights to impute CCS Veba's motivation to Care Centers and, if that motivation was retaliatory in nature, find in favor of Ryl-Kuchar. The evidence of retaliatory motive wasn't overwhelming, but it was sufficient to meet the preponderance of the evidence standard. Taken together, the inconsistencies, the timing of the decision, and Care Centers's concerns about rising health care costs provided reasonable grounds to infer retaliation. The jury was entitled to dismiss Care Centers's excuse that the reason it waited so long to determine Ryl-Kuchar was a part-time employee was because it was in the midst of changing the way it monitored workers' hours. It was not unreasonable for the jury to conclude, based on the evidence, that the real reason was because Ryl-Kuchar elected to take FMLA leave.

The interference claim is easier still. Viewing the evidence in the light most favorable to Ryl-Kuchar, a reasonable jury could have found that Care Centers interfered with her right to continued health insurance coverage. A reasonable jury could have concluded that Ryl-Kuchar was in fact a full-time employee until she took FMLA leave in late July or early August, thus entitling her to health insurance not only through that date, but also through the date she resigned while out on leave. 29 U.S.C. § 2614(c)(1); *see also* 29 C.F.R. § 825.100(b) ("An employee on FMLA leave is . . . entitled to have health benefits maintained while on leave as if the employee had continued to work instead of taking the leave.").

The judgment based on the jury's verdict is AFFIRMED and the case REMANDED for calculation of the appropriate fee award under 29 U.S.C. § 2617(a)(3). Ms. Ryl-Kuchar is

also awarded her costs on this appeal. In accordance with her attorney's request at oral argument, Ryl-Kuchar's cross-appeal is DISMISSED.[1]

---

[1] We have considered the arguments made by Care Centers regarding damages and find them unpersuasive.

---