In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3400

ROBERT JONES,

*Plaintiff-Appellant,*

*v.*

C&D TECHNOLOGIES, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:10-cv-696—**William T. Lawrence**, *Judge.*

ARGUED MARCH 29, 2012—DECIDED JUNE 28, 2012

Before KANNE, ROVNER, and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge.* Robert Jones brought this action alleging that his employer, C&D Technologies, Inc., interfered with his right to take leave under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.* The district court granted summary judgment for C&D Technologies, reasoning that Jones was not entitled to FMLA leave because he did not receive treatment during his absence. We affirm.

**I. BACKGROUND**

In June 2000, C&D Technologies hired Robert Jones as a machine operator for its plant in Attica, Indiana. Both before and during his time at C&D, Jones experienced periodic leg and back pain and bouts of anxiety. Jones's condition required him to see a treating physician once every two or three months and to undergo a series of tests two or three times per year. Jones also took prescription medication.

Effective May 1, 2003, C&D implemented a comprehensive attendance policy that assesses employees a varying number of points for policy violations. For example, employees are assessed one point if they miss more than four hours of a scheduled shift and one-half point for absences lasting less than four hours but more than thirty minutes. The company also requires employees to report all absences exceeding thirty minutes to a shift supervisor prior to the absence. Failure to do so results in the assessment of an additional one-half point against the employee. Points are not assessed for pre-approved FMLA absences. Consequences for violating the policy depend on the number of accumulated points. In any four-month period, an employee who receives one point is given a written warning; a second written warning is given to those employees who accrue two points; and a third point results in termination. Immediately preceding his October 1, 2009, absence, Jones had accrued two and one-half points.

During the last week of September 2009, Jones spoke with Cathy Morgan, C&D's FMLA Coordinator, about his

medical condition. On September 25, and again on October 2, Jones's treating physician, Dr. Kathryn Lubak, faxed Morgan FMLA certifications indicating that Jones required periodic treatment for his leg pain and anxiety. On September 30, Jones again spoke with Morgan, this time to request FMLA leave for a 1:00 p.m. appointment the next day in Crawfordsville, Indiana. During that conversation, Morgan made clear that Jones must notify his supervisor of the absence. The parties dispute whether Jones requested FMLA leave for the entire day or whether he simply requested leave for his afternoon appointment.

Jones missed his entire scheduled shift on October 1. He claims to have left a voicemail for his supervisor prior to his absence, but the company disputes this. In any event, on the morning of October 1, Jones first retrieved his paycheck from C&D and then visited Dr. Lubak at her clinic in Veedersburg, Indiana. At approximately 10:00 a.m., Jones signed in at Dr. Lubak's office, although he did not have a scheduled appointment. He did two things while there. First, he confirmed that Dr. Lubak's office had transferred all necessary referral paperwork to the Crawfordsville clinic—the site of his afternoon appointment. Jones maintains that this confirmation was necessary because Dr. Lubak's clinic was unaffiliated with the Crawfordsville clinic, and he wanted to ensure the paperwork was in order before making the twenty-five-mile drive. Second, Jones obtained a prescription-refill note for Xanax and hydrocodone. Throughout this unscheduled visit, Jones was never examined or evaluated by Dr. Lubak. Rather, the entirety of Jones's contact with

Dr. Lubak took place in the office lobby. Jones left Dr. Lubak's office after approximately twenty-five minutes. He then traveled to Crawfordsville for his 1:00 p.m. appointment.

Because of his October 1 absence, C&D suspended Jones from work beginning October 2, pending a further investigation. Jones and a union representative then met with company officials on October 6. At that meeting, C&D claims that Jones was unable to provide any documentation suggesting that he received treatment for his health condition on the morning of October 1. Following the meeting, company officials contemplated assessing Jones one and one-half points for his absence and failure to provide prior notification to his supervisor. C&D officials ultimately assessed Jones only one-half point, concluding that Jones's absence in the morning was for "personal business," while his afternoon was spent receiving FMLA-qualifying treatment. The company also gave him the benefit of the doubt as to whether he gave prior notice to his supervisor. The one-half point assessed for the morning absence gave Jones a total of three points in the preceding four-month period. In accordance with its attendance policy, C&D terminated Jones's employment on October 7.

Jones filed suit on June 7, 2010, alleging that C&D interfered with his right to take FMLA leave. On May 6, the company and Jones filed cross-motions for summary judgment. The district court subsequently granted C&D's motion and denied Jones's motion, reasoning that Jones was not entitled to leave on the morning of October 1

because he did not receive medical treatment for his condition. Jones filed this timely appeal.

## II. ANALYSIS

On cross motions for summary judgment, we review the district court's resolution *de novo*, viewing the record in the light most favorable to Jones and drawing all reasonable inferences in his favor. *See Clarendon Nat'l Ins. Co. v. Medina*, 645 F.3d 928, 933 (7th Cir. 2011). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We must affirm a grant of summary judgment if Jones cannot establish an element of his claim on which he would bear the burden of proof at trial. *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

The FMLA generally provides eligible employees with as many as twelve weeks of unpaid leave during any twelve-month period. 29 U.S.C. § 2612(a)(1). Employers are prohibited from interfering with an employee's use or attempted use of FMLA leave. *Id.* § 2615(a)(1). To prevail on an FMLA-interference theory, the plaintiff employee must prove that: "(1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled." *Makowski v. SmithAmundsen LLC*, 662 F.3d

818, 825 (7th Cir. 2011) (*quoting Goelzer v. Sheboygan Cnty., Wis.*, 604 F.3d 987, 993 (7th Cir. 2010)).

The dispute in this case focuses squarely on the third element—whether Jones was entitled to take FMLA leave on the morning of October 1.[1] Among other reasons, an employee is entitled to FMLA leave if she suffers from "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D); *see also Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005). Thus, for Jones to be entitled to FMLA leave, he must suffer from a "serious health condition," and he must be unable to perform the duties of a machine operator. *See Stoops v. One Call Commc'ns, Inc.*, 141 F.3d 309, 312 (7th Cir. 1998). The Act itself and the accompanying Department of Labor (DOL) regulations provide further clarification as to each component. First, the Act defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Jones maintains, and C&D does not dispute, that his leg and back pain and bouts of anxiety qualify as a "serious health condition" involving continuing treatment.

Jones must satisfy a second requirement to be entitled to FMLA leave under the serious-health-condition sub-

---

[1] The parties also dispute the fourth and fifth elements of Jones's interference claim, but our conclusion as to the third element is dispositive.

section. Namely, he must also show that his health prevented him from performing the duties of a machine operator. *See id*. § 2612(a)(1)(D). The DOL regulations define an employee unable to perform his duties as one "who *must* be absent from work to receive medical treatment for a serious health condition." 29 C.F.R. § 825.123(a) (emphasis added). In other words, an employee who receives treatment for a serious health condition is automatically considered to be unable to perform the functions of her position. Importantly, § 825.123 uses the word "must" to imply that the employee's absence is necessary for that employee's treatment. Alternatively, an absence for unnecessary treatment or no treatment at all means that the employee is not sufficiently incapacitated so as to render her unable to perform her duties. *See Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 770 (7th Cir. 2008) ("[B]ecause the employee had not demonstrated that he was receiving treatment that rendered him unable to work on those three days, he did not demonstrate FMLA entitlement." (discussing *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 911-12 (7th Cir. 2008))). Therefore, the critical inquiry to this dispute turns on the definition of treatment. The district court and C&D agree that Jones's morning errands do not constitute treatment as a matter of law, while Jones argues that receipt of the prescription-refill note qualifies.

The FMLA does not explicitly define treatment, but the DOL regulations seemingly attempt to do so in two different provisions. Section 825.115 defines "treatment" and § 825.113(c) defines both "treatment" and "a regimen

of continuing treatment." The question for us is whether these treatment definitions can be applied to § 825.123 to determine whether "treatment" prevented Jones from performing the functions of his position.

We begin by noting that the DOL, in 29 C.F.R. § 825.113(a), parrots the Act's definition of a "serious health condition," except to note that § 825.114 further defines "inpatient care" while § 825.115 further defines "continuing treatment." Section 825.115 then lists the ways in which an employee can prove that she suffers from a serious health condition requiring continuing treatment. But importantly for this case, § 825.115 does not define what constitutes such treatment. In other words, Jones's pain and anxiety may constitute a chronic condition requiring continuing treatment, *see* 29 C.F.R. § 825.115(c), but that subsection is not helpful in determining whether Jones actually received medical treatment that prevented him from performing his job duties. And, the cases Jones attempts to rely upon generally only discuss whether the employee has a serious health condition requiring continuing treatment—an element not at issue here. *See, e.g., Stevenson v. Hyre Elec. Co.*, 505 F.3d 720, 727-28 (7th Cir. 2007); *Harrell v. Jacobs Field Servs. N. Am., Inc.*, No. 09-CV-02320, 2011 WL 3044863, at *5 (C.D. Ill. July 25, 2011); *Bardwell v. GlobalSantaFe Drilling Co.*, No. H-06-0171, 2007 WL 2446801, at *13 (S.D. Tex. Aug. 23, 2007); *Wheeler v. Pioneer Developmental Servs., Inc.*, 349 F. Supp. 2d 158, 165 (D. Mass. 2004). Section 825.115 brings us no closer to understanding the term "treatment" as used in § 825.123.

At first blush, the definition of "treatment" in § 825.113(c) appears more promising (the provision begins by stating, "The term 'treatment' includes . . . ."). Jones asks us to apply a portion of § 825.113(c) to our determination of whether he received treatment that prevented him from performing his job. Specifically, Jones points to the language in this provision that suggests that "a course of prescription medication" constitutes treatment. But, Jones overlooks a more nuanced—and accurate—reading of this provision.

The DOL defines both "treatment" and "a regimen of continuing treatment" in 29 C.F.R. § 825.113(c). The first two sentences of that subsection suggest that "treatment" includes examinations and evaluations of a "serious health condition," but excludes routine physical examinations. The last two sentences of § 825.113(c) define "a regimen of continuing treatment," as including "a course of prescription medication," but not necessarily those activities that can be "initiated without a visit to a health care provider." Jones points to the prescription-medication reference as evidence that he received FMLA treatment, but as already indicated, the "regimen-of-continuing-treatment," like the "continuing-treatment" definition, is only useful for determining whether a "serious health condition" exists. And there is some logic to this distinction. Intuitively, a course of prescription medicine is evidence that an employee suffers from a serious medical condition requiring continuous treatment—that is, the medicine is designed to treat the condition. But, taking prescription medicine is not indicative of whether an employee receives treatment

that prevents her from performing her job. Many chronic conditions require a course of prescription medication, but the FMLA requires something more for an employee to become entitled to leave—inability to perform her job functions. A course of prescription medication and an inability to perform a job are not mutually exclusive.

This distinction squares with our earlier interpretations of "treatment." In *Darst v. Interstate Brands Corp.*, we found that "treatment" does not include actions such as calling to make an appointment or scheduling substance-abuse rehabilitation. 512 F.3d at 911. Instead, treatment "include[s] examinations to determine if a serious health condition exists and evaluation of the condition." *Id. Darst*'s interpretation is in line with the definition of "treatment" as used in the first two sentences of § 825.113(c). *See also Ridings*, 537 F.3d at 770.

That brings us back to Jones's October 1 absence. That morning, Jones retrieved his paycheck from C&D and visited Dr. Lubak's clinic to ensure his referral to another lab was in order. He also obtained a prescription-refill note. Jones's first two activities plainly do not constitute treatment that otherwise prevented him from working that morning. *See Darst*, 512 F.3d at 911. Nor does merely picking up a prescription-refill note. Although we can envision a scenario where obtaining a prescription note in connection with a physician's examination might constitute treatment, this case does not approach that hypothetical. Here, Dr. Lubak never evaluated or examined Jones, and Jones even conceded in a deposition that he was never "physically

examined" that morning. Jones arrived at Dr. Lubak's clinic unannounced and appeared only to briefly speak with his physician in the office lobby. The entirety of Jones's interaction with Dr. Lubak consisted of the physician's acquiescence to refill a prescription. There is simply no evidence that Jones was examined, and therefore treated, that morning. *See* 29 C.F.R. § 825.113(c). Ultimately, Jones's prescription-refill note might be evidence of his need for continuing treatment—which only suggests that Jones has a serious health condition—but, it is not evidence that he received treatment that required him to be absent from work that morning. *See id.* § 825.123(a). Accordingly, we find that Jones did not receive treatment on the morning of October 1, and therefore, he was not entitled to take FMLA leave as a matter of law.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of C&D Technologies.