In the

# United States Court of Appeals
## For the Seventh Circuit

No. 12-1456

ZANE HOLDER,

*Plaintiff-Appellee,*

*v.*

ILLINOIS DEPARTMENT OF CORRECTIONS
AND ILLINOIS DEPARTMENT OF CENTRAL
MANAGEMENT SERVICES,

*Defendants-Appellants.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 09 C 1082 — **J. Phil Gilbert**, *Judge.*

ARGUED OCTOBER 29, 2012 — DECIDED MAY 2, 2014

Before POSNER, KANNE, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Zane Holder began working for
the Illinois Department of Corrections (Department) in 2006
as a correctional officer at the Shawnee Correctional Center
in Illinois. Unfortunately, a few years later, Holder's wife,
Sarah, began to suffer from mental health problems relating
to opiate dependency. Holder found it necessary to take

leave from work to care for and provide emotional support for his wife.

In order to assess his options, Holder spoke with the facility's Family and Medical Leave Act (FMLA) coordinator. Holder, like all new employees, had received information about FMLA leave when he was hired. Nevertheless, at the time Holder asked about his options to care for his wife, the human resources representative gave him another informational packet which explained FMLA leave. FMLA entitles eligible employees to twelve work weeks of leave during a twelve month period to care for a spouse with a serious medical condition (the definition of which we will discuss more below). 29 U.S.C. § 2612(a)(1).

Soon after, Holder informed the warden about his need for a leave of absence under the FMLA. On October 3, 2007, Holder submitted an FMLA medical certification form indicating that his wife suffered from a serious health condition as defined under the Act and that she was currently incapacitated with a chronic mood disorder and substance abuse disorder. Sarah Holder's psychiatrist checked the box indicating that it would "be necessary for the employee to take off work only intermittently or to work less than a full schedule as a result of the condition," and that the need for leave would continue for an "unknown" duration. Holder received written notification from the Department of Corrections that his FMLA request had been approved. The Department never asked him to submit any additional medical documentation supporting his claim for FMLA benefits, and it continued to pay its share of his health insurance premium until April 18, 2008.

The FMLA medical certification form that Holder submitted attributed to FMLA leave seven absences that Holder had already taken in August and September, 2007. The rest of the absences were recorded when Holder called

into work on a day-by-day basis to advise the Department that he would need to be home to care for his wife. The officer receiving the phone call would fill out the first part of the Notification of Absence form and then, upon returning to work, Holder would complete the form indicating which type of leave he had taken, as required by the procedures. The Department approved each and every one of his requests. All in all, Holder requested and received FMLA leave for approximately 130 days as listed below:

| | |
|---|---|
| September 30-October 2, 2007 (the Department initially reported 11) | 9 days |
| October 2007 (the Department initially reported 11) | 7 days |
| November 2007 | 9 days |
| December 2007 | 13 days |
| January 2008 | 17 days |
| February 2008 | 13 days |
| March 2008 | 19 days |
| April (through the 17th) 2008 | 11 days |
| April 18-30 2008 | 7 days |

On April 18, 2008, the FMLA coordinator advised Holder that his FMLA leave had expired and that if he needed additional leave, he would have to take it under a comparable state program—the Illinois Family Responsibility Leave program (FRL). The State's leave program allows up to a year of unpaid leave "under circumstances temporarily inconsistent with uninterrupted employment of State service" 80 Ill. Admin. Code § 303.148(d), such as "provid[ing] regular care to a disabled, incapacitated or bedridden" family member 20 ILCS § 415/8c(5). Under the FRL program, the State only covers

an employee's insurance premiums for up to six months. 80 Ill. Admin. Code § 303.148(n).

Between April 20 and June 9, 2008, Holder took twenty-nine absences, listing the State leave program on the "Notification of Absence" forms. The Warden disapproved his requests for June 8-9 and on the denied form, Holder wrote "last one!!!"

More than eight months later, in February 2009, the Illinois Department of Central Management Services informed Holder that the State had mistakenly paid for his health insurance premiums past the sixtieth day to which he was entitled leave, including from January 1, 2008, through June 30, 2008, and that Holder was responsible for repaying those health premiums. Beginning May 31, 2009, the State began garnishing Holder's wages, deducting 25% of his earnings each month until he had refunded $8,291.83. Holder filed suit claiming that the State defendants (the Departments of Corrections and the Department of Central Management Services) interfered with his rights under the FMLA by denying him intermittent leave beginning on or about January 1, 2008, by failing to provide notice that Holder's FMLA leave was exhausted, and by requiring him to repay the premiums beginning in January 2008. The State argued that Holder was not entitled to FMLA leave, that he never returned from that leave, and that the Department was not required to pay his health insurance premiums. Holder countered that he was entitled to continue his leave after the sixtieth day because the Department approved those additional days of FMLA leave and now was equitably estopped from denying it. The parties disputed when Holder had reached the sixtieth day of leave. Both parties filed motions for summary judgment.

In its summary judgment ruling, the court held that the State was equitably estopped from asserting that Holder was

not entitled to FMLA leave. After reviewing the elements of equitable estoppel, the court stated:

> [T]he Department represented to Holder that it had approved his FMLA leave based on the medical certification form. The Department's approval of Holder's request for FMLA leave is essentially an assertion by the Department that it was satisfied Sarah suffered from a serious health condition. Holder detrimentally relied on that representation by taking absences, believing the Department would cover his insurance premiums, and not pursuing FRL. Further, the Department could have requested more information concerning Sarah's condition if it did not believe the doctor's certification was sufficient; the department, however, failed to do so. Thus it was reasonable for Holder to rely on the Department's representation that it was satisfied Sarah suffered from a serious health condition. Accordingly, **the Department is now estopped from asserting Holder was not entitled to FMLA leave.**

(R. 48, p.6) (emphasis ours).

The court concluded that a jury would have to resolve the following factual issues that still remained: (1) When Holder's leave expired—that is, when he took his sixtieth day of leave; (2) Whether it was reasonable for Holder to rely on the Department's representations that he was entitled to FMLA leave after his sixtieth absence; (3) If it was reasonable for Holder to rely on the Department's misrepresentations, how many days after the sixtieth day was Holder's reliance reasonable. (*Id.* p.11). Ultimately the parties stipulated before trial that the sixtieth day of Holder's leave occurred on January 31, 2008. The parties also stipulated that the State's portion of Holder's insurance premium that the defendants withheld from Holder's

paycheck was $611.05 per pay period and that there were two pay periods each month.

Before trial, Holder filed a motion *in limine* seeking to bar "the Defendants from offering any evidence or from arguing that Holder was not entitled or eligible for FMLA leave." (R. 50, p.2). The State responded that it did not object based on the ruling of the court but wished to preserve the issue for appeal. (R. 51, pp.1-2).

Three days before jury selection, the defendants moved to amend the pre-trial order to remove Holder's claim as to January 2008, stating that the action was moot as the defendants had asked the Illinois Comptroller to cut a check for Holder for the disputed amount. The court stated that "January [2008] will not be an issue before the jury [but] may very well be an issue for the Court." (R. 86, Tr. 10/26/11, p.21).

At the close of the evidence Holder moved for partial judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50, for the premiums withheld in January 2008, arguing that by stipulation, the sixtieth day of FMLA leave did not occur until January 31, 2008, and thus the State was unquestionably required to pay for the premiums for that month. Rather than ruling on the motion immediately, the judge took it under advisement. The State then moved for judgment as a matter of law under the same rule arguing (1) that they had already sent a request to the comptroller to cut a check for January 1, 2008 through January 30, 2008, and (2) that the FMLA limits employees to sixty days of leave and that any days that Holder took after that were not covered by the FMLA regardless of any facts of the case. The court denied the State's motion.

The jury returned a verdict in favor of the State, and after dismissing and then speaking with the jurors, the judge

returned to the bench to address the pending Rule 50 motion, granting judgment notwithstanding the verdict for the month of January and awarding the plaintiff $1,222.10 for January 2008. The court entered a judgment for the defendants for the rest of the months. After some post-trial motions which we will address in the course of the decision, this appeal followed.

We begin by addressing the State's argument regarding the propriety of the Rule 50 motion, a legal decision which we review de novo. *Rapold v. Baxter Intern. Inc.*, 718 F.3d 602, 613 (7th Cir. 2013). Rule 50 states that "if a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may resolve the issue against the party; and grant a motion for judgment as a matter of law." Fed. R. Civ. P. 50(a) (internal section headings omitted). Unless the district court grants the motion, it is deemed to have been submitted to the jury subject to any legal questions raised in the motion. Fed. R. Civ. P. 50(b). After the verdict, the loser may renew his challenge to the sufficiency of the evidence by means of Rule 50(b). Holder moved for judgment as a matter of law after the close of evidence on the theory that once the State stipulated that the sixtieth day of FMLA leave occurred on January 31, 2008, no reasonable jury could have concluded that Holder was responsible for his health insurance premiums in January 2008. After the jury rendered its verdict for the State, the district court judge dismissed the jurors and then announced to the parties that he would leave the bench to talk to the jury. Upon the judge's return, he immediately announced his ruling on Holder's Rule 50 motion, thus Holder argues, cutting off any opportunity for Holder to make a post-verdict motion if one was required.

The State's objection to the ruling on the Rule 50 motion for judgment as a matter of law is largely based on this procedural lapse. The State argues that Rule 50(b) forbids a court from setting aside a jury verdict for any reason unless the moving party has made a post-judgment motion. Most case law dictates that a motion for judgment as a matter of law must be made after the close of evidence and renewed after the judgment. *Consumer Prods. Research & Design, Inc. v. Jensen*, 572 F.3d 436, 437-38 (7th Cir. 2009). This circuit, however, when discussing the close of evidence renewal requirement has stated that "Rule 50(b) of the Federal Rules of Civil Procedure implies (no stronger word is possible) that a motion for judgment as a matter of law must indeed be renewed at the close of evidence if the moving party wants to obtain such relief should the jury bring in a verdict against him." *Szmaj v. Am. Tel. & Tel. Co.*, 291 F.3d 955, 957 (7th Cir. 2002). We then specifically noted that this court has not, in the past "applied this rule rigidly." *Id.* (citing *Downes v. Volkswagen of Am., Inc.*, 41 F.3d 1132, 1139–40 (7th Cir. 1994)).

The rationale behind the rule is one of fairness. As we explained in *Szmaj*:

> The reason for requiring renewal is that if a motion for judgment as a matter of law is made at the close of the plaintiff's case and denied and not renewed at the close of the defendant's case, the plaintiff may assume that the denial was the end of the matter, while if the defendant shows by renewing the motion that the denial was not the end of the matter, the plaintiff may ask and may receive permission from the judge to put in some additional evidence to show that there is a jury issue. This rationale collapses when, as in this case but not in our previous cases, the judge takes the

original motion under advisement; for then the plaintiff knows at the end of the trial that the question whether the defendant is entitled to judgment as a matter of law is a live one. There is no mouse-trapping of the plaintiff in such a case; neither the language of Rule 50(b) nor the committee note suggests that renewal of the motion is required in that circumstance; and requiring a party to file a motion before a previous identical motion has been ruled on is wasteful.

*Szmaj*, 291 F.3d at 958. *Szmaj* discussed the requirement for renewal at the close of evidence, but the rationale for post-verdict renewal is no different. *See Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 133 (2d Cir. 2008) ("We have held that where the trial judge has indicated that renewing a previously made motion for judgment as a matter of law at the close of all the evidence was not necessary, and where the opposing party could not reasonably have thought that the motion was dropped, then judgment as a matter of law may be sought post-verdict.") A party who knows the court has taken a motion for a verdict under advisement has no reason to be surprised that the motion is still in play. Certainly there was no mousetrapping in this case. Holder moved for judgment as a matter of law at the close of all the evidence. The court did not deny the motion, but rather took it under advisement. For this reason the State's reliance on the footnote in *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 402 n.4 (2006), demanding strict compliance with the rule requiring a renewal motion, is not particularly helpful as the court in that case initially denied the Rule

50(a) motion for judgment notwithstanding the verdict and the parties failed to renew the motion. [1]

Our court has long rejected the formalistic renewal requirements for motions for judgment as a matter of law where they serve no purpose. In *Shaw v. Edward Hines Lumber Co.*, 249 F.2d 434 (7th Cir. 1957), this court concluded that a district court could enter judgment on the basis of a motion for a directed verdict (now called a judgment as a matter of law), even in the absence of any further post-verdict motion, when the court had expressly reserved its decision on the original motion. *Id.* at 437-38. *See also Bonner v. Coughlin*, 657 F.2d 931, 939 (7th Cir. 1981) (noting that this circuit has applied a relaxed standard to Rule 50(b) motions and stating, "[i]t is certainly the better and safer practice to renew the motion for directed verdict at the close of all the evidence, but '(t)he application of Rule 50(b) in any case "should be examined in the light of the accomplishment of (its) particular purpose as well as in the general context of securing a fair trial for all concerned in the quest for truth."'"). As we said in *Szmaj*, to treat the failure-to-renew rule rigidly where the court had taken the matter under advisement rather than denying it outright, "would ordain redundancy and create a trap for the unwary, of which the law contains a sufficient number as is to keep us entertained." *Id.* at 958.

In sum, the district court was certainly entitled to grant Holder's Rule 50 motion despite the fact that Holder did not

---

[1] Congress amended Fed. R. Civ. P. 50 rule slightly in 2006, removing the requirement of renewing a Rule 50 motion at the close of all evidence in order to preserve it for the verdict, although the requirement to renew a motion post-judgment remains. Our reasoning regarding fairness and notice when a motion has been taken under advisement applies in either circumstance.

renew his motion after the verdict. Holder moved for judgment as a matter of law "as it relates to the month of January 2008" at the close of all the evidence and the district court did not deny the motion, but took it under advisement. As soon as the judge returned from dismissing the jury, he immediately ruled on the pending motion thus obviating the need for Holder to renew it. Finally, the State was not disadvantaged by the court's ruling, as it knew that the motion had never been dismissed and was still in play. As Holder points out, any other rule, would have required the nonsensical result that Holder was required to renew the motion that had just been granted by the court.

As for the argument that the court failed to explain its Rule 50 ruling as required, the State's brief argument warrants only an equally brief response. Although it is true that the court did not give much of an explanation for its ruling, the ruling did not require much. The parties had stipulated that Holder's sixtieth day of FMLA leave occurred on January 31, 2008, and the court had already declared that he was eligible for FMLA leave. In fact, even the defendants, by cutting a check for Holder for the January 2008 payments and arguing that the issue was moot, admitted that Holder did not owe the State for the January 2008 premiums. *See* (R.86, Tr. 10/26/08, pp.14-23). If more explanation was required, the court explained its reasoning in its January 25, 2012 ruling on liquidated damages. (R at 77, pp. 2-5).

The State also argues that it was not given an opportunity to rebut Holder's arguments as to the January 2008 time period. We find to the contrary. The district court explained its ruling regarding eligibility in the summary judgment order and noted that a factual dispute remained regarding the sixtieth day of leave. Once the State and Holder entered into a stipulation about the sixtieth day, that issue had been removed from the jury. The State could have

appealed the summary judgment holding on this matter (more on this below), but instead made the tactical decision to argue that its agreement to pay rendered the issue moot. When a party selects among arguments as a matter of strategy, he also waives those arguments he decided not to present. *U.S. v. Brodie*, 507 F.3d 527, 531-32 (7th Cir. 2007).

The State's other strategy was to try to turn both the trial and now the appeal into one which examined Sarah Holder's eligibility for leave in the first place. To establish a claim under the FMLA, an employee must show: (1) he was eligible for FMLA protection; (2) his employer is covered by the FMLA; (3) he was entitled to take leave under the FMLA; (4) he provided sufficient notice of his intent to take leave to his employer; and (5) his employer, the State, denied him FMLA benefits to which he was entitled. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1062 (7th Cir. 2014). The State argues that Holder was not entitled to leave under the FMLA.

The trouble for the State, however, is that the district court ruled on summary judgment that Holder was indeed entitled to FMLA leave—up until his sixtieth day of leave. The State has not challenged that ruling, but attempts to skirt it in another way. The State's argument is based on a distinction it makes between the entitlement to FMLA in the first place due to a serious health condition that makes one unable to work (we'll call this "threshold entitlement," although that term is entirely of our making) and entitlement to take leave on any particular day because the employee or family member is unable to work or required treatment on the particular day she was absent (we will call this "date-specific entitlement"—again, a term of our making). The State seeks to convince us that the court's ruling that Holder was entitled to FMLA leave concerned only the first entitlement question—that is whether Holder's

wife suffered from a serious medical condition, and left open the issue of the second entitlement—that is whether his wife's sufficiently serious health condition rendered her unable to care for her own basic needs on those specific days that Holder did not report for work.

Based on this theory, the State peppers its brief with facts (not admitted at trial) attempting to demonstrate that Sarah Holder did not have a serious medical condition rendering Holder eligible for FMLA leave. At trial, the State argued in a sidebar conference that when Holder testified at trial that he believed that all of his 133 absences had been necessary to take care of his wife, he opened the door for evidence that his wife had worked a good portion of those 133 days. On appeal the State argues that the district court erred when it denied it the opportunity to cross-examine Holder's wife about her medical condition. We review a district court's evidentiary rulings under an abuse of discretion standard and give "special deference" to the district court's findings reversing only when "no reasonable person could take the view adopted by the trial court." *Common v. City of Chicago*, 661 F.3d 940, 946 (7th Cir. 2011).

The problem with the State's argument that the court only ruled on the first of two types of entitlement is that it is not supported by the procedural facts of the case nor by case law. Both parties appear to have acknowledged that the issue of entitlement was resolved prior to trial. Holder filed a motion *in limine*, moving the court to exclude any evidence of his wife's medical condition on the theory that that issue had been resolved and was not subject to proof at trial. (R.50, pp.2-3). The State agreed that given the summary judgment ruling, the issue could not be raised at trial. (R.51, pp.1-2). And the pre-trial order did indeed conclude that "the Defendants are estopped from claiming that Holder was not entitled to FMLA leave." (R.52 p.2). The State never sought

to limit the summary judgment ruling to one particular type of entitlement.

Moreover, the State's convoluted and confusing argument and the cases it cites do not illuminate a long-standing distinction between these two types of entitlement as the State promises. What those cases do demonstrate is that there are various reasons why an employee might be ineligible for leave; sometimes employees attempt to take FMLA leave to which they are not entitled; employers can and do ferret out the illegitimate leaves by timely asking for more support for the need for leave—either before or after the fact, by conducting surveillance, asking for medical documentation or by immediately denying leave to which an employee is not entitled. In none of these cases has an employer granted scores and scores of leave days without any requests for more proof, only to deny the leave months and months after the fact.

The *Scruggs* case the State cites in rebuttal only reinforces why the district court's ruling on estoppel was correct. *Scruggs v. Carrier Corp.*, 688 F.3d 821 (7th Cir. 2012). Although it is true in *Scruggs* that the employer approved Scruggs' FMLA leave only to find that he had lied about his mother's need for assistance on a relevant date, the employer did not attempt to retroactively deny an FMLA leave long after the fact. In *Scruggs*, the employee requested and was initially approved for leave on July 24th, 26th, 27th, and August 8th. Surveillance on July 24th revealed that Scruggs had not used his leave for the intended purpose. By August 9th, the employer confronted Scruggs and asked for more proof that the leave was legitimate. When the proof fell flat, Scruggs was terminated. *Id.* at 823-24. This is precisely what the State could have done—immediately ask for more proof of legitimacy. *See also Jones v. C & D Techs., Inc.*, 684 F.3d 673, 676 (7th Cir. 2012) (immediately upon return from

questionable leave, the employee was asked to document the need for FMLA leave); *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907, 911-12 (7th Cir. 2008) (When Darst returned from his July 29th, August 2d and 3d leave, the company immediately terminated him for taking leave to which he had not been entitled under the FMLA as he was not seeking treatment for alcoholism at the time). Instead, the State continued to approve FMLA leave for approximately nine months, never once asking for additional information or giving Holder any reason to think he might be accruing thousands of dollars in debt to the State. The *Scruggs* case does not establish a distinction between "threshold entitlement" and "date specific entitlement;" it establishes that an employer may deny FMLA leave or terminate an employee in a timely manner based on an honest suspicion that the employee was abusing her leave. *Scruggs*, 688 F.3d at 826. The State chose not to do either of these things.

The other cases the State relies upon offer no more help, as they also do not make any distinction between "threshold entitlement" and "date-specific entitlement," but rather demonstrate the various legitimate ways an employer can deny FMLA leave when it discovers that an employee is not entitled to the leave and then immediately acts on that knowledge. *See, e.g.*, *Jones*, 684 F.3d at 679 (holding that employer did not violate FMLA by denying leave because renewing a prescription and transferring a medical record is not "treatment" as described in the Act); *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 826 (7th Cir. 2012) (employer does not violate FMLA where employee never properly asked for FMLA leave in the first instance); *Darst,* 512 F.3d at 907, 911-12 (employer legitimately terminated Darst for taking leave to which he had not been entitled under the FMLA as he was not seeking treatment for alcoholism at the time); *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 771 (7th Cir. 2008) (failure to

turn in the forms foreclosed Ridings' ability to persevere on an FMLA interference claim because she did not fulfill her obligations in order to be protected).

We cannot conclude, as the State would like, that when the district court stated that "the Department is now estopped from asserting Holder was not entitled to FMLA leave," (R.48, p.6) (*see also* R.52, p.2) it was only referring to one kind of (undefined) entitlement and not another. The district court declared that the defendant could not challenge Holder's entitlement to leave. We take the ruling on its face, and the State has never requested that we overturn this ruling—just that we declare it limited to a particular type of entitlement. We decline to do so.

And if we did, and if these two types of entitlement did exist, we fail to see why reliance would not also preclude the defendants from arguing about date-specific entitlement. If the State had denied Holder's leave in its entirety, he could have explored other options for leave or for care for his wife. For example, under the State's Family Responsibility Leave an employee need only show that he perceives that he has a duty to care for a loved one in order be qualified for leave. 80 Ill. Admin. Code 303.148(d). Holder could have taken this leave for up to twelve months rather than twelve weeks and the State would have been required to continue to pay its portion of the medical benefits for up to six months of that leave. 80 Ill. Admin. Code 303.148 (a), (n). Similarly, if he had known that his employer doubted the veracity of his need for leave on any particular day, he could have presented support for his need for leave that day. Moreover, if he had known his leave might be denied retroactively long after the fact and he would be liable for more than $8000 of premium payments, he could have assessed the financial risk of taking leave. Although we need not decide today how long after granting leave an employer has to question

the veracity of a claim, we note that there must be some ability for an employee to rely on a grant of leave without risk of retroactive revocation months down the road.

Moreover, it is worth raising the issue of whether it makes sense for the FMLA to require the same definition of "serious health condition" for the ailing family member as it does when addressing the employee itself. The statute states that an employee may take FMLA leave "[i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). The regulations define "serious health condition" as one "that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D); 29 C.F.R. § 825.113.

Suppose however, that, not unlike in the actual factual scenario here, Sarah Holder suffered from serious depression and her health care provider was concerned about a possible suicide risk. Nevertheless, she worked from home as a seamstress and was perfectly capable of performing the tasks of her job and, in fact, her health care provider may have recommend-ed that she continue to work as a way of keeping busy and feeling useful. In order to do so, however, she required a watchful eye. Because Holder could not bring his wife to his place of business to keep watch over her, it may have made quite a bit of sense both economically and therapeutically for Sarah Holder to stay home and work, and for Holder to stay home and act as the watchful eye. Surely the legislature could not have intended that both spouses remain unemployed where one is able to work. This dilemma seems particularly relevant when the family member has a mental health condition but can still perform the physical demands of a job. Some courts have held that an employee need not be completely incapacitated

and unable to work at *any* job, but unable to perform the functions in her current job in order to qualify for FMLA leave. *Stekloff v. St. John's Mercy Health Sys.*, 218 F.3d 858, 862 (8th Cir. 2000). In the Americans with Disabilities Act context we have stated that a disabled person should not be punished for heroic efforts to work by being held to have forfeited his entitlement to disability benefits should he stop working. *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir. 2003). The same ought to be true in this context. If the Holders pooled resources to maintain their family income during the time of the serious health condition, they should not be punished for their heroic efforts.

For now, we can leave this as food for thought for the next case or for Congress' consideration. The court determined that, having granted Holder FMLA leave for some time, it was estopped from claiming he was not entitled to that leave. Even under the State's unproven bifurcated entitlement analysis, any reliance that Holder may have placed when he thought he was "entitled" would have applied under either definition of "entitled" — threshold entitlement or date specific entitlement.

The State argues that Holder's reliance upon the State's approval of his FMLA leave was not reasonable — that the Department's approval of his application for intermittent leave for his wife's condition could not have been interpreted as a "carte blanche" grant to take absences of FMLA leave even on days she worked and thus was not incapacitated. Because we have concluded that Holder's eligibility for leave had been resolved and the State was

estopped from arguing about it, we need not address this issue.[2]

In short, because the State was estopped from arguing about Holder's entitlement to leave, and the parties had stipulated that Holder's sixtieth day of leave was January 31, 2008, there was only one reasonable conclusion for the jury to make. The only real remaining issue for the jury was whether it was reasonable for Holder to rely on the State's approval after the sixtieth day of leave —a question not at issue in this appeal.

Other than the bifurcated entitlement argument, the State's defense hinged primarily on the fact that the defendants' promise to pay on the eve of trial mooted the issue as to the January 2008 premiums (the State actually argues that it did not moot the issue, but rather negated the injury—more on this later). The promise involved a statement that the State would "waive" $864.17 that it claimed Holder still owed to the State for premiums for months that Holder was not entitled to leave and would issue a check in the amount of $357.93 to cover the balance of the amount that that had been withheld from Holder's pay to reimburse the State for the insurance premiums. Three days before jury selection, the defendants moved to amend the pre-trial order to delete Holder's claim regarding January 2008, stating that "[a]s of October 21, 2011, Defendant CMS has directed the Comptroller to reimburse

---

[2] Again, although it was not an issue raised in this case, the reasonableness of Holder's conclusion that his wife had a serious medical condition that required him to stay home despite the fact that she could physically care for her mother, certainly could depend on how one interprets serious conditions that may still allow a family member to perform some or all of the functions of a job with some help from the FMLA leave-taking family member.

to Plaintiff the amount of the employer's contribution to his health insurance premiums for January 2008." (R. 57, p.1).

The State claimed that its initial theory of the case—that Holder was not entitled to take 110 of his 133 absences as FMLA leave—had been rejected at summary judgment and that it was only when preparing the defendants' witnesses for trial that it determined that Holder was not responsible for his health insurance premiums for January 2008. The court issued its summary judgment order on July 25, 2011, and yet it was not until the eve of trial on October 21, that the defendants confessed that they had improperly held Holder accountable for the January 2008 premiums. (R. 57).

The district court judge, demonstrating his displeasure that the State conceded error on the January, 2008 premiums just before trial, stated:

> I'm concerned that the State on the, on the eve of a trial all of a sudden acknowledges that they are wrong for January when this, this case has been litigated for two years, has January in the mix, and all of a sudden the State's saying, well, you're not entitled to liquidated damages or attorney's fees because we're going to pay you for January. I have a—I may have a problem with that.

(R. 86 at p. 21).

The defendants then noted that the State would not be paying interest as "interest is only available, as are liquidated damages, in the case of a judgment of a violation. *Id.* at 22.

The court's concern is one that has arisen in a variety of contexts since the Supreme Court eliminated a catalyst theory of liability in *Buckhannon Bd. and Care Home, Inc. v. W.Va. Dept. of Health and Human Res.*, 532 U.S. 598 (2001).

Prior to *Buckhannon* a party could argue that it had prevailed if it achieved the desired outcome of litigation even if the new situation resulted from a voluntary change in the defendant's conduct. *Id.* at 600. Rejecting the catalyst theory, *Buckhannon* now requires a "material alteration in the legal relationship of the parties" in the form of a court-ordered judgment or consent decree before a court can award attorneys fees. *Id.* at 604. As this court and others have noted, such a rule can have the effect of prolonging litigation, only to have a defendant who sees the writing on the wall settle at the last minute to avoid attorneys fees, class certification—or in this case attorneys fees, liquidated damages, and interest. *See Scott v. Westlake Servs. LLC* 740 F.3d 1124, 1126 n.1 (7th Cir. 2014) ("since most plaintiffs are happy to have defendants surrender, this tactic is most controversial as a means to short-circuit a looming class action or as a means to avoid paying attorney fees and costs."); *Bingham v. New Berlin Sch. Dist.* 550 F.3d 601, 604 (7th Cir. 2008) (noting that the *Buckhannon* decision may encourage late settlement or other attempts to game the fee-shifting system).

The State insists that its argument is not one about mootness, but rather about lack of injury. This is a red herring. Whether a case becomes moot because of an offer to make whole or was moot from the start because the plaintiff lacked an injury, the analysis involves the same inquiry—that is, whether there is an actual case or controversy for a federal court to decide. Once a defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate and thus no controversy to resolve. *Rand v. Monsanto Co.*, 926 F.2d 596, 598 (7th Cir. 1991). But the mere promise to pay some portion of what the plaintiff might have been entitled to after a suit does not render the case moot. The proper test for mootness on appeal is "not whether we may

return the parties to the status quo ante, but rather, whether it is still possible to 'fashion some form of meaningful relief' to the appellant in the event he prevails on the merits." *Flynn v. Sandahl*, 58 F.3d 283, 287 (7th Cir. 1995). "[S]o long as the plaintiff has a cause of action for damages, a defendant's change in conduct will not moot the case." *Buckhannon*, 532 U.S. at 608-09. In this case the damages provision of the FMLA provides for (1) actual lost wages and/or benefits; (2) interest on that amount; and (3) liquidated damages in the amount equal to the lost wages and/or benefits. 29 U.S.C. § 2617(a)(1)(A)(i).

The defendant waived one portion of the January premium and offered to send a check for the other. It did not offer to pay interest or liquidated damages which this circuit has declared to be the norm in FMLA cases. 29 U.S.C. § 2617(a)(1)(A); *Ryl-Kuchar v. Care Ctrs., Inc.* 565 F.3d 1027, 1030 (7th Cir. 2009). We have recently noted that if a defendant offers to pay only what it thinks might be due, the offer does not render the plaintiff's case moot. *Scott*, 740 F.3d at 1126-27, *citing Gates v. Towery*, 430 F.3d 429, 431–32 (7th Cir. 2005). The FMLA contemplates that a plaintiff whose rights have been violated under the FMLA is entitled to liquidated damages and interest, and thus an offer that does not include those is not an offer for full relief.[3] We have

---

[3] The basic purpose of interest, after all, is to put a party in the position it would have been in had it been paid immediately, and therefore ensure that a party is fully compensated for its loss. *Am. Nat. Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys., Inc.* 325 F.3d 924, 935 (7th Cir. 2003). We need not determine whether liquidated damages are compensatory or punitive, although under the similar Fair Labor Standards Act they are compensatory and not punitive. *Overnight Transp. Co. v. Missel*, 316 U.S. 572, 583-84 (1942); *Coston v. Plitt Theatres, Inc.*, 831 F.2d 1321, 1328 n.2 (7th Cir. 1987), *rev'd on other grounds*, 108 S. Ct. 1990

noted that in this situation, like the one in *Scott*, Holder still has a stake in the action because he may obtain additional relief if he prevails. The plaintiff's stake is negated only if no additional relief is possible. *Id.*

It is true that an employer can rebut the presumption of liquidated damages if it can prove that its action was taken in "good faith" and that it had "reasonable grounds for believing that the act or omission was not a violation," of the Act. 29 U.S.C. § 2617(a)(1)(A)(iii). The district court, however, concluded that the defendants had "not carried their burden of showing that their decision to withhold from Holder's wages the costs of the employer's contribution for health insurance benefits for January 2008 was in good faith." (R. 77, p.5). We review, for abuse of discretion only, the district court's decision to award liquidated damages. *Shea v. Galaxie Lumber & Const. Co., Ltd.*, 152 F.3d 729, 733 (7th Cir. 1998) (applying general principle in Fair Labor Standards Act case); *Pagan-Colon v. Walgreens of San Patricio, Inc.*, 697 F.3d 1, 14 (1st Cir. 2012) (in FMLA context). Consequently, just as in *Scott*, the defendant's offer was not a full offer to pay all of what was due, but rather all of what the defendants believed was due under the defendants' theory that their actions were all taken in good faith and reasonable.

In any event, it is hard to imagine that the offer made on the eve of trial, more than a year after the suit was filed,

---

(1988). At least one circuit has explicitly discussed the issue and carried this conclusion over to the FMLA. *Jordan v. U.S. Postal Serv.*, 379 F.3d 1196, 1202 (10th Cir. 2004). In any event, the existence of interest is enough for us to conclude that Holder was not made whole by the defendants' offer.

constitutes action made in good faith. The defendants posited a theory that it was not until the district court rejected their initial theory of the case at summary judgment and it was preparing its witnesses for trial that they determined that Holder was not responsible for the State's portion of his health insurance premium for January 2008. The defendants fail to explain how their change in strategy revealed the new information which was just as available to the defendants from the start of the case. After all, the defendants were the ones who held the insurance records and the absence records. They have not explained how they came to conclude that the January payments were improperly withheld. And in any event, the court entered its summary judgment order on July 25, 2011. The defendants have offered no explanation as to why it did not re-evaluate its case then to determine whether Holder was still responsible for premiums and instead waited until the eve of trial.

The State has included a kitchen sink worth of arguments in this small appeal and we have ignored some minor issues that make no difference to the outcome. The ones we have discussed give us ample reason to conclude that the judgment of the district court should be AFFIRMED.