PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No.  09-1635

———

MS. RACHAEL SCHAAR,

Appellant,

v.

LEHIGH VALLEY HEALTH SERVICES, INC.;
LEHIGH VALLEY PHYSICIANS BUSINESS SERVICES,
INC.

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Number: 07-cv-04135)
District Judge:  Honorable Henry S. Perkin

———

Argued December 15, 2009
Before: FISHER, HARDIMAN and VAN ANTWERPEN,
*Circuit Judges*.

David L.  Deratzian (Argued)
Hahalis & Kounoupis
20 East Broad Street
Bethlehem, PA 18018-0000
    *Attorneys for Appellant*

Jonathan B.  Sprague (Argued)
Darren M. Creasy
A. James Johnston
Post & Schell
1600 John F. Kennedy Boulevard
Four Penn Center, 14th Floor
Philadelphia, PA 19103-0000
    *Attorneys for Appellees*

---

OPINION OF THE COURT

---

HARDIMAN, *Circuit Judge*.

Rachael Schaar appeals the District Court's summary judgment in favor of her former employer, Lehigh Valley Physicians Business Services, Inc. (Lehigh Valley). The District Court held that Schaar did not qualify for leave under the Family and Medical Leave Act (FMLA) because she did not present

2

evidence of a serious health condition. This appeal raises a question of first impression in this Court: whether a combination of expert and lay testimony can establish that an employee was incapacitated for more than three days as required by the FMLA's implementing regulations.

I.

We exercise plenary review over the District Court's summary judgment, viewing the facts in the light most favorable to the nonmoving party. *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 502 (3d Cir. 2009). "Summary judgment is appropriate only if there are no genuine issues of material fact such that the movant is entitled to judgment as a matter of law." *Id.*

A.

Schaar worked as a medical receptionist for Lehigh Valley from December 2002 until her termination on October 3, 2005. Two weeks before she was fired, on September 21, 2005, Schaar was treated for low back pain, fever, nausea and vomiting. Dr. Twaddle, who also worked for Lehigh Valley, diagnosed Schaar with a urinary tract infection, fever and low back pain. His records indicate that Schaar was "comfortable and nontoxic."

Dr. Twaddle placed Schaar on a clear diet and prescribed an anti-inflammatory for her back. He also prescribed an antibiotic for the infection, to be taken once a day for at least three days. During his deposition, Dr. Twaddle testified that the

antibiotic should have lowered Schaar's fever and eliminated her symptoms after a day or two. Nevertheless, Dr. Twaddle testified that it was "possible, although very unlikely" that Schaar would not be fully recovered enough to work after three days.

At the end of the visit, Dr. Twaddle wrote a note advising Schaar's supervisor, office manager Patricia Chromczak, that Schaar's illness prevented her from working Wednesday, September 21, and Thursday, September 22. In the note, Dr. Twaddle stated Schaar was under his care "for febrile illness and will be unable to perform duties at work today or tomorrow." Though there is some dispute about what Dr. Twaddle told Schaar, she claims he offered to speak with Chromczak upon her arrival at work. Schaar then taped the note to Chromczak's door and went home. Schaar did not seek any further treatment with Dr. Twaddle.

Consistent with Dr. Twaddle's note, Schaar took paid sick leave on September 21 and 22 and was in bed with pain, fever and vomiting. As chance would have it, Schaar had previously scheduled vacation days on Friday, September 23 and Monday, September 26. Schaar claims she spent Friday, September 23 in bed because she was still vomiting and nauseous. Although she a felt a little better on Saturday, she spent that day in bed as well. By Sunday, Schaar claims she felt well enough to go to the couch, but was still ill. On Monday, Schaar testified she was well enough to do some housework, and she returned to Lehigh Valley the following day, Tuesday, September 27, 2005.

4

Upon returning to work, Schaar told Chromczak that she had been sick all weekend. Schaar neither requested FMLA leave nor asked Lehigh Valley to convert her two paid vacation days into paid sick days, however. Though their conversation is disputed, Schaar claims Chromczak threatened to fire her for violating the company policy requiring her to call off on her two sick days. When Schaar told Chromczak she thought the policy did not apply because she left a note, Chromczak said she was going to consult with human resources about the next step. After doing so, Chromczak was told that Schaar's decision to leave a note in lieu of calling off was not a terminable offense.

Six days later, on October 3, 2005, Schaar was terminated. In a written explanation, Chromczak stated: "[o]n 9/21/05 Rachael brought a note from her doctor for a 2 day excuse from work. She taped the note to manager's door and left, never calling off from work." Chromczak also listed several mistakes and performance issues relating to essential aspects of Schaar's job, including improperly listing co-payments on bank deposit slips. Schaar had been disciplined in the past for similar issues, including several warnings that culminated in a one-day suspension without pay in October 2004. After the suspension Schaar was again warned to improve within 60 days and that failure to improve would "lead to disciplinary action and/or termination."

B.

Schaar sued Lehigh Valley, claiming interference and discrimination in violation of the FMLA, 29 U.S.C. § 2601 *et*

*seq.*[1]   In its motion for summary judgment, Lehigh Valley argued Schaar did not qualify for FMLA leave because she failed to establish she was incapacitated for three days and failed to give proper notice that she may qualify for leave. Alternatively, Lehigh Valley argued that it could not be liable because it fired Schaar for violating the call-in policy, not for taking FMLA leave, and because it would have fired her anyway for poor performance.

The District Court granted Lehigh Valley's motion for summary judgment, holding that Schaar did not establish a serious health condition because she failed to present medical evidence that she was incapacitated for more than three days. *Schaar v. Lehigh Valley Health Servs., Inc.*, No. 07-4135, 2009 WL 323140, at *4-*6 (E.D. Pa. Feb. 9, 2009). The District Court reasoned that expert medical testimony is necessary to establish that the incapacity was "due to" the illness. *Id.*

Schaar filed this timely appeal, arguing that the District Court erred in granting summary judgment on her FMLA claims. The District Court had jurisdiction under 28 U.S.C. § 1332 and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

II.

---

[1] Schaar also sued Lehigh Valley's parent company, Lehigh Valley Health Services, Inc.

The purpose of the FMLA is "to balance the demands of the workplace with the needs of families." 29 U.S.C. § 2601(b)(1). Accordingly, the FMLA "entitle[s] employees to take reasonable leave for medical reasons," *id.* § 2601(b)(2), but they must do so "in a manner that accommodates the legitimate interests of employers." *Id.* § 2601(b)(3). An eligible employee is entitled "to a total of twelve workweeks of leave during any twelve month period" but only if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." *Id.* § 2612(a)(1)(D). Once an employee is entitled to leave, the FMLA prohibits an employer from interfering with it or retaliating against an employee for taking it. *Id.* § 2615(a) & (b).

The crucial question in this appeal is whether Schaar was entitled to take FMLA leave. To be eligible, Schaar had to be a covered employee working for a covered employer. *Id.* §§ 2611(2), (4)(A)(i). She also had to suffer from a serious health condition and give her employer adequate notice of her need for FMLA leave. *Id.* §§ 2612(a)(1)(D), (e)(2)(B). It is undisputed that Schaar was an eligible employee[2] and that Lehigh Valley was a covered employer.[3] Lehigh Valley

---

[2] An employee is eligible if she worked for a covered employer for at least 12 months and for at least 1,250 hours during the previous 12 months. 29 U.S.C. § 2611(2).

[3] A covered employer is "any person engaged in commerce or in any industry or activity affecting commerce who

7

disputes, however, that Schaar suffered from a "serious health condition" and that she gave adequate notice. The District Court granted Lehigh Valley summary judgment, finding that Schaar did not present a triable issue of fact on a serious health condition, without addressing the question of notice.

As relevant to this appeal, the FMLA defines serious health condition as "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." *Id.* § 2611(11). A Department of Labor regulation further defines continuing treatment by a health care provider as a "period of incapacity . . . of more than three consecutive calendar days . . . that also involves . . . [t]reatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider."[4] 29 C.F.R. § 825.114(a) (2005).[5] Incapacity means the "inability to work, attend school or

---

employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A)(i).

[4] Regimen of continuing treatment includes "a course of prescription medication (e.g., an antibiotic)." 29 C.F.R. § 825.114(b).

[5] The Department of Labor regulations have since been renumbered. All citations herein are to the regulations as they existed in 2005.

perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." *Id.*

The only issue in dispute is whether Schaar presented evidence that she was incapacitated for more than three days. The District Court held Schaar had to establish more than three days of incapacitation through medical evidence. Because Schaar presented a doctor's note that established incapacitation for only two days and relied on her own testimony about the remaining days, the District Court granted summary judgment for Lehigh Valley.

Although we have not addressed the question presented by this appeal, other courts have adopted three approaches: (1) the evidence of incapacitation must come exclusively from a medical professional; (2) lay testimony, on its own, is sufficient; or (3) lay testimony can supplement medical professional testimony or other medical evidence.

Many district courts, including those in the Third Circuit, have held that a health care provider's professional medical opinion is the only evidence that can establish incapacity. *See Schaar,* 2009 WL 323140, at *4-*6 (compiling cases). These decisions reason that a medical expert is required to establish that the employee was incapacitated *because of* the injury or illness. 29 C.F.R. § 825.114(a) (requiring the period of incapacitation be "due to the serious health condition"); *Olsen v. Ohio Edison Co.*, 979 F. Supp. 1159, 1166 (N.D. Ohio 1997) ("It does not mean that, in the employee's own judgment, he or she should not work . . . . Rather, it means that a 'health care provider' has determined that, in his or her professional medical

9

judgment, the employee *cannot* work (or could not have worked) *because of* the illness.").

Contrary to the aforementioned district courts, all of the circuit courts of appeals to address the question we now consider have held that lay testimony can create a genuine issue of material fact regarding incapacitation. *Lubke v. City of Arlington*, 455 F.3d 489, 495-96 (5th Cir. 2006); *Rankin v. Seagate Techs., Inc.*, 246 F.3d 1145, 1148-49 (8th Cir. 2001); *Marchisheck v. San Mateo County*, 199 F.3d 1068, 1074 (9th Cir. 1999); *see also Haefling v. United Parcel Serv., Inc.*, 169 F.3d 494, 499-500 (7th Cir. 1999) (looking for evidence of incapacitation in the employee's diary and deposition testimony). Some of our sister circuits have held that lay testimony alone is sufficient to establish incapacitation, while others have held that lay testimony may be used to supplement medical evidence.

The Courts of Appeals for the Fifth and Ninth Circuits hold that lay testimony is sufficient, by itself, to establish incapacitation. *Lubke*, 455 F.3d at 495-96; *Marchisheck*, 199 F.3d at 1074. The Fifth Circuit has held that expert medical testimony is not "necessary to demonstrate [the employee's] incapacitation." *Lubke*, 455 F.3d at 495-96. The Ninth Circuit has gone even farther, holding lay testimony creates a genuine issue of material fact even when all medical evidence is to the contrary. *Marchisheck*, 199 F.3d at 1072-75. In *Marchisheck*, the employee took time off to care for her son. The treating physician said the boy was "feel[ing] remarkably well" and sent him home without any restrictions, *id.* at 1071, but the boy said he "did not and could not do anything for four or five days." *Id.*

10

at 1074. The Ninth Circuit reversed summary judgment, stating: "Notwithstanding the stronger evidence to the contrary, [the boy's] declaration creates a disputed issue of fact and precludes summary judgment on the issue of 'incapacity.'" *Id.*

Taking a more restrictive approach than the Fifth and Ninth Circuits, the Eighth Circuit has allowed lay testimony only to supplement incomplete medical evidence. *Rankin*, 246 F.3d at 1148-49. In *Rankin*, the employee visited the doctor for a routine check up and discussed her illness with the nurses. *Id.* at 1146. A week later when the severity became more apparent, she phoned the nurse practitioner complaining of vomiting, coughing, congestion, and sleeplessness and was then examined by the nurse practitioner who diagnosed a viral illness. *Id.* The employee was prescribed cough suppressants, a decongestant and an inhaler. *Id.* The Eighth Circuit held that the employee's testimony, combined with the medical evidence from the nurses and nurse practitioner, created a genuine issue of material fact regarding incapacitation. *Id.* at 1148-49.

## III.

Our interpretation is guided by the statute and the Department of Labor regulations. Congress vested the Secretary of Labor with the authority to "prescribe such regulations as are necessary to carry out" the FMLA provisions. 29 U.S.C. § 2654. Acting on that authority, the Secretary promulgated a

11

series of regulations.[6]  29 C.F.R. § 825 *et seq*.  We interpret those regulations using our well-established canons of statutory interpretation.

The regulation at issue in this case provides that the ambiguous statutory language "continuing treatment by a health care provider," 29 U.S.C. § 2611(11)(b), can be satisfied by showing at least three days of incapacitation.  29 C.F.R. § 825.114.  This regulation does not speak to whether medical testimony is required.  In the very next regulation, however, the Department of Labor requires a "health care provider" to determine that an employee is "unable to perform the functions of the position."  *Id.* § 825.115.  Because the incapacitation regulation does not require, or even mention, a health care provider determination, *id.* § 825.114, we find no support in the regulations to exclude categorically all lay testimony regarding the length of an employee's incapacitation.  *Cf. Jama v. ICE*, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest.").

Contrary to the Fifth and Ninth Circuits, however, we do not find lay testimony, by itself, sufficient to create a genuine

---

[6] As a result, we have held that *Chevron* deference applies to these regulations, *Sommer v. Vanguard Group*, 461 F.3d 397, 399 n.2 (3d Cir. 2006), except when they contradict the statute.  *See Erdman*, 582 F.3d at 507.

issue of material fact. Some medical evidence is still necessary to show that the incapacitation was "due to" the serious health condition. 29 C.F.R. § 825.114. This does not place an undue burden on employees because they must present some medical evidence anyway to establish the inability to perform the functions of the position. *Id.* § 825.115. In contrast, allowing unsupported lay testimony would place too heavy a burden on employers to inquire into an employee's eligibility for FMLA leave based solely on the employee's self-diagnosed illness. For these reasons, we hold that an employee may satisfy her burden of proving three days of incapacitation through a combination of expert medical and lay testimony.

Viewing the facts of this appeal in the light most favorable to Schaar, Dr. Twaddle wrote that Schaar was incapacitated for two days because of her illness. When that expert medical opinion is combined with Schaar's lay testimony that she was incapacitated for two additional days, it necessarily follows that a material issue of fact exists as to whether Schaar suffered from a "serious health condition." Of course, we express no opinion as to whether Schaar's lay testimony regarding her incapacitation is credible and we do not reach the question of the adequacy of her notice because the District Court did not address it.

For the reasons explained herein, we will vacate the judgment of the District Court and remand the case for further proceedings.