In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-3391

JAMES G. HANSEN,

*Plaintiff-Appellant,*

*v.*

FINCANTIERI MARINE GROUP, LLC, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 1:12-cv-00032-WCG — **William C. Griesbach**, *Chief Judge.*

ARGUED MAY 19, 2014 — DECIDED AUGUST 18, 2014

Before ROVNER, WILLIAMS, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge*. James Hansen sued his former employer, Marinette Marine Corporation, and its parent company, Fincantieri Marine Group, LLC (collectively FMG) in federal district court in Wisconsin, alleging violations of the Family and Medical Leave Act of 1993 (FMLA or Act), 29 U.S.C. §§ 2601–2654. He claims that FMG interfered with his rights under the FMLA and terminated his employment in retaliation for his exercise of rights under the Act.

The district court granted summary judgment in favor of
FMG. The court ruled that without expert testimony Hansen
could not show that his serious health condition rendered
him unable to work (*i.e.*, perform one or more of the essen-
tial functions of his position) during the absences for which
he claims he was entitled to FMLA leave and for which he
was terminated, and Hansen had no such testimony. Be-
cause the law does not require a plaintiff to present expert
testimony as to his incapacity, and Hansen's evidence has
raised a genuine issue of material fact for trial, we vacate the
district court's judgment and remand for further proceed-
ings consistent with this opinion.

## I. Background

Hansen was employed by FMG, which has an attendance
policy. Under the policy, employees accumulate points for
unexcused absences from work. An employee incurs one
point for missing more than four hours of a scheduled work
day. A point expires one year after it was incurred and then
is deducted from an employee's total number of points.
When an employee incurs ten or more points within a year,
his employment is subject to termination. FMLA leave is not
counted under the attendance policy. FMG's third party ad-
ministrator, Matrix Absence Management, Inc., administers
the attendance policy.

As of May 2, 2011, Hansen had nine attendance points.
He was absent from work four days from May 3 through
May 6, and on May 9. On May 3, he requested FMLA leave
for his serious health condition: depression. On May 11,
FMG received a medical certification from Hansen's physi-
cian, Dr. Michael Post, stating that Hansen had a condition
that would cause episodic flare-ups periodically preventing

him from performing his job functions. The physician wrote that Hansen "could not concentrate on [the] task at hand." Dr. Post indicated that the condition commenced in October 2010 and was exacerbated on May 3, 2011. He stated that the probable duration of the condition was "months" and estimated the frequency of flare-ups as four episodes every six months and the duration of the related incapacity as two to five days. Based on Dr. Post's certification, Hansen's absences earlier that month were approved as FMLA leave and he did not incur any attendance points because of them.

Hansen requested FMLA leave for May 23, and May 31– June 1, and again for June 13–June 15. He was granted FMLA leave for those absences and incurred no attendance points for them. Hansen next requested FMLA leave for June 22 and 27. Matrix initially denied these requests, but FMG overruled it and granted Hansen FMLA leave. So Hansen also incurred no attendance points for these absences.

Next, Hansen requested FMLA leave for an absence on July 1 (his eighth episode). On July 6, Matrix sent Dr. Post a fax, indicating that the July 1 absence "is out of his frequency and duration. Please confirm item #7." Item #7 on the medical certification form asks about the employee's need to attend follow-up appointments or work part-time or on a reduced schedule because of the employee's condition. It seems Matrix intended to seek confirmation about Item #8 on the certification form, which asks about the estimated frequency and duration of episodic flare-ups as well as the duration of the related incapacity. That same date, Dr. Post faxed back his response to Matrix: "Item #7 confirmed." Based on this confirmation, Matrix denied Hansen's request

for FMLA leave because his "[f]requency [was] exceeded."
Hansen incurred one attendance point as a result.

Hansen requested FMLA leave for absences on July 11–
13 (his ninth episode) and again on July 18 (his tenth epi-
sode). Matrix denied these requests, indicating that Hansen's
"[f]requency [was] exceeded." Hansen therefore incurred
one attendance point for each day he was absent. As a result,
he had accumulated thirteen points in one year. (Some of his
points had expired and had been deducted from his point
total, so he did not exceed ten points sooner.)

On July 22, FMG met with Hansen and terminated his
employment for violating its attendance policy. FMG ex-
plained that he "exceeded [his] frequency" under which he
could "miss 4 times every 6 months" and that "Matrix called
your doctor and there was no change in your certification."
Hansen asked if there was "any way to reverse any of the
dates?" and was told to "[g]et a hold of Matrix."

Subsequently, on July 26, Dr. Post sent FMG and Matrix a
letter, indicating that he was modifying his original certifica-
tion: he was increasing the period of incapacity "to cover the
entire year of 2011 until December 31" and "[w]ith further
insight into [Hansen's] clinical course," he was "amending
question 8's answer to increase[e] the frequency [of epi-
sodes] to once a month for a duration of 2–5 days per epi-
sode." The letter did not mention or refer to Hansen's July
absences. FMG did not retract its termination of Hansen's
employment.

Hansen sued FMG under the FMLA alleging claims of in-
terference and retaliation. The retaliation claim stands or

falls with his interference claim.[1] FMG moved for summary judgment, arguing that Hansen was not entitled to FMLA leave for his July 2011 absences because he significantly exceeded the estimated frequency in Dr. Post's medical certification. The district court denied FMG's motion, noting that it appeared Hansen was taking off more time than was medically necessary, but it was not so clear as to justify summary judgment. Shortly before trial, however, FMG sought reconsideration, arguing that Hansen needed expert medical testimony to establish that he was incapacitated due to his serious health condition during the July 2011 absences and that he had none. The court agreed, concluding that expert medical testimony was required to prove that Hansen's serious health condition rendered him unable to perform the functions of his position during the absences for which he sought FMLA leave. It therefore decided that Hansen could not establish entitlement to FMLA leave and granted FMG summary judgment on all claims. Hansen appealed.

## II. Discussion

On appeal, Hansen asks us to decide two issues: 1) whether an employer is allowed to deny intermittent FMLA leave when an eligible employee exceeds the estimated length or duration provided in his medical certification form, and 2) whether a plaintiff-employee is required to present expert testimony at trial to prove that he was incapacitated for each day for which he requested FMLA leave. FMG responds that Hansen cannot prove a prima facie case of

---

[1] If Hansen was entitled to take leave under the FMLA for his July absences, he can establish a prima face case of FMLA retaliation: It is undisputed that he incurred attendance points for those absences, and those points led to the termination of his employment.

FMLA discrimination and retaliation without an expert witness or medical documentation to show that his July 2011 absences were medically necessary. FMG also claims that Hansen's appeal is frivolous and seeks sanctions under Rule 38 of the Federal Rules of Appellate Procedure. We conclude that the district court erred in deciding that Hansen needed expert testimony to prove that his serious health condition rendered him unable to perform the functions of his job on the specific dates at issue. Hansen has evidence that raises a reasonable inference that he was entitled to FMLA leave for his July 2011 absences; therefore, we reverse the district court's grant of summary judgment and deny FMG's request for sanctions.

We review the grant of summary judgment *de novo*, viewing the record and drawing all reasonable inferences in the light most favorable to the non-moving party. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law." *Id.* (quotation marks and citation omitted). We will reverse a grant of summary judgment if there is "a material issue of fact … that would allow a reasonable jury to find in favor of the non-moving party." *Id.* "A 'court may not … choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party.'" *Orton-Bell v. Indiana*, No. 13-1235, --- F.3d ---, 2014 WL 3566338, at *4 (7th Cir. July 21, 2014) (quoting *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005)).

### A. The FMLA

The FMLA provides that an eligible employee may take up to twelve weeks of leave during any twelve-month period if he is unable to perform the functions of his position because of a serious health condition. 29 U.S.C. § 2612(a)(1)(D). An employer is prohibited from interfering with the exercise of or the attempt to exercise any right under the FMLA. *James v. Hyatt Regency Chi.*, 707 F.3d 775, 780 (7th Cir. 2013) (citing 29 U.S.C. § 2615(a)(1)). And it is unlawful for an employer to retaliate against an employee who exercises or attempts to exercise FMLA rights. *Id.* at 781 (citing 29 U.S.C. §2615(a)(2)). To prevail on his interference claim, Hansen must show, among other things, that he was entitled to take leave under the FMLA for his July absences. *Id.* This is the focus of this appeal.

"An employee is entitled to leave under the FMLA if (1) she is afflicted with a 'serious health condition,' and (2) that condition renders her unable to perform the functions of her job." *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 669 (7th Cir. 2011) (quoting *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 590 (7th Cir. 2008)). A "serious health condition" is defined in part as "an illness, … impairment, or … mental condition that involves … continuing treatment by a health care provider," 29 U.S.C. § 2611(11)(B), and a "period of incapacity," 29 C.F.R. 825.115 (2009). "Incapacity" means the "inability to work … or perform other regular daily activities due to the serious health condition." 29 C.F.R. § 825.113(b). Because "incapacity" means the employee is unable to work "due to the serious health condition," a finding of incapacitation goes toward the second prong of our analysis as to when an

employee is entitled to leave. *See Ames*, 629 F.3d at 669. While "incapacity" and "serious health condition" are interrelated, as the definitions make clear, they are not interchangeable terms.

Some serious health conditions may be chronic, causing episodic rather than a continuous incapacity. *Stoops v. One Call Commc'ns, Inc.*, 141 F.3d 309, 312 (7th Cir. 1998) (citing 29 C.F.R. § 825.114(a)(2)(iii)(C)). Therefore FMLA leave "may be taken intermittently … when medically necessary." *Stoops*, 141 F.3d at 312 (citing 29 U.S.C. § 2612(b)(1)); *see also* 29 C.F.R. § 825.202(b) ("For intermittent leave … because of one's own serious health condition, … there must be a medical need for leave … .").

When an employee initially requests FMLA leave, the employer may take the employee at his word and grant the request, or "may request certification by the employee's healthcare provider." *Kauffman v. Fed. Exp. Corp.*, 426 F.3d 880, 886 (7th Cir. 2005) (citing 29 U.S.C. § 2613(a)). If certification is requested, the employee must provide it "in a timely manner." 29 U.S.C. § 2613(a); *see* 29 C.F.R. § 825.305(b). The health care provider's certification for intermittent leave "shall be sufficient" if it provides the date the serious health condition began, its probable duration, appropriate medical facts about the condition, "a statement that the employee is unable to perform the functions of [his] position, … a statement of the medical necessity for the intermittent leave …, and the expected duration of the intermittent leave… ." 29 U.S.C. § 2613(b)(1)–(3), (4)(B) and (6); *see also Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 768 (7th Cir. 2008); 29 C.F.R. § 825.306(a)(7) (requiring certification for intermittent leave to include "*an estimate* of the frequency and duration of the

episodes of incapacity" (emphasis added)). The regulations suggest that "the employee's submission of a complete medical certification is sufficient to trigger FMLA protection unless and until there is contrary medical evidence." *Smith v. Univ. of Chi. Hosps.*, No. 02 C 0221, 2003 WL 22757754, at *8 (N.D. Ill. Nov. 20, 2003).

The regulations provide that "[t]he employer shall advise an employee whenever the employer finds a certification incomplete or insufficient, and shall state in writing what additional information is necessary to make the certification complete and sufficient." 29 C.F.R. § 825.305(c).[2] If a certification is incomplete or insufficient, the employer must provide the employee an opportunity to cure the deficiency. *E.g.*, *Ridings*, 537 F.3d at 768; 29 C.F.R. § 825.305(d). *Accord Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 579 (6th Cir. 2007) (recognizing that "other courts will impose [the duty to inform the employee of a deficiency in a certification and provide a reasonable opportunity to cure] on employers when the FMLA certification is merely 'inadequate,' rather than 'incomplete'") (citing *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1209 n. 12 (11th Cir. 2001); *Baldwin–Love v. Elec. Data Sys. Corp.*, 307 F. Supp. 2d 1222, 1234 (M.D. Ala. 2004)). If the employee fails to provide a complete and sufficient certification, despite the opportunity to cure a deficiency, "the employer may deny the taking of FMLA leave." 29 C.F.R. § 825.305(d). Notably, the regulations do not author-

---

[2] "A certification is considered incomplete if the employer receives a certification, but one or more of the applicable entries have not been completed" and "[a] certification is considered insufficient if the employer receives a complete certification, but the information provided is vague, ambiguous, or non-responsive." 29 C.F.R. § 825.305(c).

ize the employer to deny FMLA leave where the employee fails to provide a complete and sufficient certification but is not given the opportunity to cure the deficiency.

"The FMLA circumscribes the employer's right to challenge a physician's certification that leave is FMLA-qualifying." *Stoops*, 141 F.3d at 313 (citing 29 U.S.C. § 2613). The employer may require that the employee obtain a second opinion regarding information provided in the certification. 29 U.S.C. § 2613(c). If the second opinion differs from the opinion in the certification provided by the employee, the employer may require that the employee obtain a third opinion, which "shall be considered to be final and shall be binding on the employer and the employee." *Id.* § 2613(d)(2). The regulations authorize an employer to request recertification if "[c]ircumstances described by the previous certification have changed significantly (e.g., the duration or frequency of the absence …)." 29 C.F.R. § 825.308(c)(2); *see also Holder v. Ill. Dep't Corrs.*, 751 F.3d 486, 494 (7th Cir. 2014) (noting that the employer could have "immediately ask[ed] for more proof of legitimacy" of the need for FMLA leave). As part of recertification, "the employer may provide the health care provider with a record of the employee's absence pattern and ask the health care provider if the serious health condition and need for leave is consistent with such a pattern." 29 C.F.R. § 825.308(e).

## B. Proving Incapacity

Hansen argues that the district court erred in deciding that a plaintiff needs expert testimony to prove that he was incapacitated each day for which he requested FMLA leave due to his serious health condition. Hansen did not identify

Dr. Post as an expert witness; he is a fact witness only. Hansen has no expert witness for trial.

FMG relies on *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 591 (7th Cir. 2008), and *Haefling v. United Parcel Serv., Inc.*, 169 F.3d 494 (7th Cir. 1999), to support its argument that Hansen needed expert testimony to establish entitlement to FMLA leave, specifically to prove incapacity on the days at issue. But neither case provides such support. Instead, they stand for the unsurprising proposition that a plaintiff needs some medical evidence to establish a serious health condition. *See Caskey*, 535 F.3d at 591 (concluding that plaintiff's "general testimony that her condition was serious is insufficient to raise a genuine issue of material fact" as to whether she had a serious health condition entitling her to FMLA leave); *Haefling*, 169 F.3d at 500–01 (concluding the evidence was insufficient to raise a genuine issue of fact as to whether plaintiff suffered from a serious health condition where plaintiff had no affidavit from his doctor or any other medical personnel demonstrating the necessity of the treatments he allegedly received; plaintiff's own testimony regarding the severity of his condition and the treatment it required were insufficient to raise an issue of fact). FMG cites no controlling authority directly on the issue of whether an employee's initial medical certification is sufficient to make out a prima face case for FMLA leave, or whether expert testimony is required to establish incapacity where the employee suffers from a chronic condition like depression. Indeed, in *Haefling*, we looked to the plaintiff's own diary and his deposition testimony in addressing whether he could establish a genuine issue of fact as to his incapacity. 169 F.3d at 499–500. Thus, *Haefling* actually supports Hansen's view that he does not need expert testimony to establish incapacity.

Other circuits have held that lay testimony combined with medical testimony raises a genuine issue of material fact as to incapacity. *See Schaar v. Lehigh Valley Health Servs., Inc.*, 598 F.3d 156, 161 (3d Cir. 2010) (holding that "[s]ome medical evidence is still necessary" and that an employee can create a genuine issue of material fact as to incapacity "through a combination of expert medical and lay testimony"); *Rankin v. Seagate Techs., Inc.*, 246 F.3d 1145, 1148–49 (8th Cir. 2001) (holding that plaintiff's own affidavit testimony that she was "too sick to work" and her testimony concerning her conversation with nurses about her condition combined with her medical records created a genuine issue of material fact regarding her incapacity). Two other circuits have gone further and have held that lay testimony alone is sufficient to create a genuine issue as to incapacity; expert testimony is not required. *Lubke v. City of Arlington*, 455 F.3d 489, 495–96 (5th Cir. 2006) (holding expert testimony was not necessary to demonstrate plaintiff's incapacity); *Marchisheck v. San Mateo Cnty.*, 199 F.3d 1068, 1074 (9th Cir. 1999) (holding plaintiff's declaration that "I just did not and could not do anything for four or five days" creates "a disputed issue of fact and precludes summary judgment on the issue of 'incapacity'" notwithstanding medical evidence to the contrary). *But see Culpepper v. BlueCross BlueShield of Tenn.*, 321 F. App'x 491, 496–97 (6th Cir. 2009) (holding that the plaintiff's "own subjective testimony that she was too sore from surgery to work" was insufficient to establish that her absences were covered by the FMLA where her medical certification stated that she would need to be absent from work for two episodes of incapacity lasting three days each).

The district court relied on *Price v. City of Fort Wayne*, 117 F.3d 1022 (7th Cir. 1997), to support its conclusion that Han-

sen needed medical testimony to establish incapacity on the specific days in question. But *Price* does not require medical testimony to prove incapacity; the issue there was whether the plaintiff's multiple diagnoses gave rise to a serious health condition. *Id.* at 1025. It was undisputed that the plaintiff was incapacitated by her multiple illnesses. *See id.* Dr. Post's medical certification establishes that Hansen has a serious health condition, and FMG has not contested that certification.

Moreover, the regulations addressing "continuing treatment" and "intermittent leave or reduced leave schedules" anticipate that the determination whether an employee is unable to work due to a serious health condition would not necessarily be made by a medical professional. The "continuing treatment" regulation provides that "[a]bsences attributable to incapacity … [due to a chronic serious health condition] qualify for FMLA leave even though the employee … does not receive treatment from a health care provider during the absence." 29 C.F.R. § 825.115(f). As an example, "an employee with asthma may be unable to report for work due to the onset of an asthma attack." *Id.* Another example: "An employee who is pregnant may be unable to report to work because of severe morning sickness." *Id.* In neither example would the employee necessarily seek treatment from a health care provider. The "intermittent leave" regulation similarly provides that "[i]ntermittent … leave may be taken for absences where the employee … is incapacitated or unable to perform the essential functions of the position because of a chronic serious health condition …, even if he or she does not receive treatment by a health care provider." 29 C.F.R. § 825.202(b)(2). If the employee does not visit a health care provider during the flare-up of the chronic condition

such as depression, the health care provider would not have any personal knowledge about the employee's claimed incapacity that day. There would be no medical testimony about the incapacity on that particular day and the only available evidence to prove incapacity would be lay testimony. Thus, the regulations support the conclusion that incapacity can be established by lay testimony and expert medical testimony is *not* required to prove the incapacity.

The district court erred in determining that Hansen was required to present expert testimony to prove that his chronic serious health condition rendered him unable to work on the days in question. And Hansen has presented medical documentation—his certification from Dr. Post—on the question of incapacity. Even FMG acknowledges that the medical certification can constitute evidence that the employee's absences are FMLA qualifying. *See* Appellee's Br. 32–33.

## C. An Estimate Is Just That

FMG requested medical certification from Hansen's health care provider, and Hansen provided it, using the form FMG had given to him for that purpose. Dr. Post certified that Hansen has a chronic serious health condition that will cause episodic flare-ups, periodically preventing him from performing his job functions. The certification set forth the date the condition began (October 25, 2010), its probable duration ("months"), and relevant medical facts about the condition. The certification stated that because of the condition, Hansen was unable to perform one of his job functions: he could not concentrate on the task at hand. Dr. Post certified that it was medically necessary for Hansen to be absent from work during flare-ups. The form asked for the physi-

cian's "best estimates" in answering questions about the frequency or duration of a condition, treatment, etc. In particular, question #8 asked: "Will the condition cause episodic flare-ups periodically preventing the employee from performing his/her job functions?" Dr. Post put an "X" next to the box indicating "Yes." The question continued: "Based upon the patient's medical history and your knowledge of the medical condition, *estimate* the frequency of flare-ups and the duration of related incapacity that the patient may have over the next 6 months … ." (emphasis added). Dr. Post responded, "4 times per 6 months" lasting "2–5 day(s) per episode." The certification form requested an estimate, and Dr. Post gave an estimate. Dr. Post's certification was sufficient to certify Hansen's need for intermittent leave and Hansen's submission of the certification entitled him to FMLA leave. *See* 29 U.S.C. § 2613(b)(1)–(3), (4)(B) and (6); 29 C.F.R. § 825.306(a)(7).

FMG suggests that Dr. Post's certification constituted hearsay. However, a health care provider's medical certification could be considered a record of a regularly conducted activity and thus would be admissible under the business records exception to the hearsay rule if the proper foundation were laid. Fed. R. Evid. 803(6). Dr. Post is listed as a witness for trial; he can provide the testimony necessary as required by Rule 803(6). We have routinely relied on the medical certifications of health care providers submitted by employees to their employers to establish the employees' entitlement to FMLA leave. *See, e.g.*, *Kauffman*, 426 F.3d at 886–87 (holding physician's certification and addendum were sufficient to certify that employee had serious health condition requiring him to miss more than three days of work and vacating district court's grant of summary judgment to em-

ployer); *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 911 (7th Cir. 2008) (stating that "[the plaintiff's] only evidence of treatment is [his physician's] Certification").

Dr. Post's certification establishes that Hansen has a serious health condition and that this condition periodically renders him unable to perform the functions of his job. FMG did not challenge the certification or require that Hansen obtain a second opinion. Instead, it granted Hansen FMLA leave on the basis of the certification and thus by its actions approved the certification. When Hansen's absences exceeded the frequency of the flare-ups and duration of related incapacity estimated in the certification, FMG did not seek recertification, despite its authorization do so under the circumstances. *See* 29 C.F.R. § 825.308(c)(2) (authorizing recertification if "[c]ircumstances described by the previous certification have changed significantly (e.g., the duration or frequency of the absence …)"); *see also Holder*, 751 F.3d at 494 (noting that the employer could have "immediately ask[ed] for more proof of legitimacy" of the need for FMLA leave). As part of recertification, FMG could have asked Dr. Post whether Hansen's condition and the need for leave were consistent with the frequency and duration of his absences, *see* 29 C.F.R. § 825.308(e), but FMG did not do that either.

FMG argues that Hansen's entitlement to intermittent FMLA leave is limited to the precise frequency and duration stated in the certification. But the cited authorities do not stand for such a sweeping proposition. *See Culpepper*, 321 F. App'x 491; *Harville v. Texas A&M Univ.*, 833 F. Supp. 2d 645 (S.D. Tex. 2011); 29 C.F.R. §§ 825.202(b), 825.203, 825.220(c), 825.301(a); 6 Fed. Reg. 2197 (Jan. 6, 1995). For example, in *Culpepper*, the plaintiff's physician certified her for two sepa-

rate three-day periods of intermittent leave, and the plaintiff provided only her own testimony that she was unable to work beyond those two periods. 321 F. App'x at 493. The court noted that the plaintiff "received exactly what her doctor ordered—six days of FMLA leave." *Id.* at 496. There was no suggestion that the doctor's certification was an estimate of the needed leave; it appears to have been exact, which distinguishes *Culpepper* from this case. In *Harville*, the plaintiff presented an initial medical certification for episodic leave for up to three days per month and then presented a certification for eight days of episodic leave per month; however, she was absent from work "all of July, August 1–24, seven days in September, fourteen days in October, all of November, and December 1–21." 833 F. Supp. 2d at 650. The district court granted summary judgment for the defendant where "the plaintiff's absences far exceeded the amount of her medically permitted FMLA leave." *Id.* at 653. Even if *Harville* establishes that the medical certification limits the frequency and duration of FMLA-qualifying leave, that case involved leave that "far exceeded" what was stated in the certification; the plaintiff was absent from work almost all the time. Hansen's absences were not so far in excess of the estimated frequency and duration. And none of the other authorities cited by FMG establish that the estimated frequency and duration of intermittent leave act as absolute limits on the employee's entitlement to leave.

Other courts have rejected arguments similar to FMG's "limitations argument." In *Fritz v. Phillips Serv. Indus., Inc.*, 555 F. Supp. 2d 820 (E.D. Mich. 2008), for example, the plaintiff had surgery on his knee in 2003 for which he was granted FMLA leave. He claimed that a two day absence in May 2005 was because of the same "knee condition" for which he

was granted FMLA leave two years earlier and argued that the employer could not terminate him for those absences. *Id.* at 822, 826. The plaintiff's 2003 FMLA request form stated that he would need eight weeks off following surgery; it did not refer to any continuing treatment or need for leave beyond that. The court rejected the employer's attempt to rely on the absence of certification for the need for leave beyond the eight weeks post-surgery to justify the denial of FMLA leave. *Id.* at 824–25. It decided that "[t]he absence of any certification that Plaintiff would require leave beyond the initial eight-week recovery period" did not equate to "an explicit certification that Plaintiff did not require any absence from work due to his condition." *Id.* at 825. In denying summary judgment, the court reasoned that the employer was on notice that the plaintiff had a serious health condition related to his knee and should have inquired further into his reasons for taking leave. *Id.* at 826. Like the certification in *Fritz*, Dr. Post's certification did not explicitly certify that Hansen would not need leave beyond the estimated frequency or duration.

In *Sims v. Alameda-Contra Costa Transit Dist.*, 2 F. Supp. 2d 1253 (N.D. Cal. 1998), the employee suffered a back injury and provided his employer with a medical certification stating that he was unable to work from April 16 through April 25, 1994, and again from April 26 through May 1, 1994. Yet the employee was absent from April 18 through May 3, and the last two days of absence were a factor in the decision to terminate his employment. The employee also provided a certification from a chiropractor that covered all of his absences, but the chiropractor did not qualify as a "health care provider" under the FMLA. *Id.* at 1255–56, 1265. The employer argued that because the last two days of the employ-

ee's absence were not excused by a health care provider, they were not protected by the FMLA and were properly counted under its attendance policy. *Id.* at 1266. The court reasoned that if the employer had notified the employee "that it considered his certification to be incomplete," *id.*, and had given him a reasonable opportunity to correct the deficiency, it might agree. But because the employer never informed the employee that his "certification was inadequate in any way," the court held that the employer could not deny leave under the FMLA based on the two-day insufficiency in the certification. *Id.* Similar to *Sims*, Hansen's absences exceeded the frequency of absences predicted in his certification, but FMG did not allow him to cure the deficiency before firing him, so it could not deny him FMLA leave based on the perceived insufficiency.

Moreover, if the frequency and duration stated in the certification set a limit to the employee's entitlement to FMLA leave, there would be no need for the regulation that authorizes an employer to request recertification where the "[c]ircumstances described by the previous certification have changed significantly (e.g., *the duration or frequency of the absence* …)." 29 C.F.R. § 825.308(c)(2) (emphasis added). This regulation, as the district judge recognized, "contemplates the precise situation present here where an employee's frequency of absences exceeds what is described in the initial certification… ." *Hansen v. Fincantieri Marine Group, LLC*, No. 12-C-032, 2013 WL 2918329, at *4 (E.D. Wis. June 14, 2013). FMG should have sought recertification when the frequency of Hansen's absences exceeded what was estimated in his certification, rather than simply denying him leave.

Matrix may have attempted recertification with its fax to
Dr. Post; but its attempt was improper. An "employer must
give notice of a requirement for certification each time a cer-
tification is required." 29 C.F.R. § 825.305(a). There is no evi-
dence that Matrix gave Hansen notice of its faxed communi-
cation to Dr. Post. And the regulations prevent an employer
from communicating directly with the employee's health
care provider with a few exceptions not applicable here. *See*
29 C.F.R. § 825.307(a). Matrix erred in contacting Dr. Post di-
rectly. Besides, Matrix sought to confirm the prior certifica-
tion; it did not request certification for the absences that ex-
ceeded the estimated frequency and duration. And the fax
itself was horribly confused and confusing—it sought con-
firmation of Dr. Post's response to the question about ongo-
ing treatment rather than the frequency of episodic flare-ups
and incapacity.

We reject the argument that the *estimates* in the certifica-
tion act as limitations on the frequency and duration of epi-
sodes for which an employee may be entitled to intermittent
leave under the FMLA. The certification requested, and Dr.
Post provided, his "estimate" of the frequency of the flare-
ups and duration of related incapacity. *See* 29 C.F.R.
§ 825.306(a)(7) (requiring a certification for intermittent leave
to include "*an estimate* of the frequency and duration of the
episodes of incapacity") (emphasis added). As the district
court correctly stated, "[a]n estimate, by definition is not ex-
act and cannot be treated as a certain and precise schedule."
*Hansen*, 2013 WL 2918329, at *5. If the certified frequency
and duration were limits on the employee's entitlement to
leave, there would be no need to request recertification
when the employee's requested leave exceeded the frequen-
cy or duration stated in the certification; "[t]he employer

could simply deny FMLA leave." *Id.* at \*6. At trial, Dr. Post can testify as a fact witness as to the meaning of his estimates.

Furthermore, FMG errs in asserting that Dr. Post's certification, his July 6 fax, and his July 26 letter establish the lack of medical necessity for Hansen's July 2011 absences. None of these documents explicitly addresses the July absences. While these documents could raise an inference of a lack of medical necessity for absences exceeding the estimated frequency, another reasonable inference can be drawn: the documents simply do not address the medical necessity of the July absences. The record does not show whether Dr. Post even knew about the July absences. Nor does it reveal whether he was ever asked if those absences were due to Hansen's depression, despite the fact that they exceeded the frequency of episodes estimated in the certification. Matrix's July 6 fax to Dr. Post was so confused and confusing that Dr. Post's response thereto does not raise any reasonable inferences. And it is unclear whether his July 26 letter was intended to be prospective only. As noted, FMG could have informed Dr. Post of Hansen's July absences and asked Dr. Post if Hansen's condition and medical need for leave was consistent with his absences, but it did not. It appears that the district court chose between competing inferences, drawing adverse inferences against Hansen, which was improper at the summary judgment stage. *See, e.g.*, *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (per curiam); *see also Orton-Bell*, 2014 WL 3566338, at \*4 (at summary judgment, a court "may not … choose between competing inferences"). Admittedly, Hansen does not have abundant evidence to establish the medical necessity of his July 2011 absences; but he does not need abundant evidence to create a jury question.

Although the certification does not specifically cover the July absences, the certified need for intermittent leave could support a jury finding that Hansen's chronic serious health condition rendered him unable to work on the days in question. We find guidance in the Third Circuit's decision in *Schaar*, 598 F.3d 156, and in *Crowell v. Denver Health & Hosp. Auth.*, No. 12-cv-00019-LTB-MEH, 2013 WL 788087 (D. Colo. March 1, 2013). The issue in *Schaar* was whether the plaintiff was entitled to take FMLA leave because she had a serious health condition that involved a period of incapacity of more than three days. *Id.* at 158–59. The plaintiff presented her physician's note that the plaintiff's illness prevented her from working for two days, and the plaintiff testified that she was incapacitated for an additional two days. The court concluded that the combination of the physician's opinion and the plaintiff's lay testimony created a material issue of fact as to whether the plaintiff was incapacitated for more than three days. *Id.* at 161. Although the court was addressing whether the plaintiff could establish that she had a serious health condition, its conclusion that the physician's opinion and the plaintiff's testimony raised a material issue of fact as to incapacity applies equally where the defendant challenges whether a plaintiff can establish incapacity on specific days for which FMLA leave was requested.

Even more on point is *Crowell*, where the plaintiff sustained an arm and back injury in an accident and sought intermittent FMLA leave. Her physician completed a medical certification stating that the plaintiff would be unable to work for a continuous period of time. The certification also stated that the "[p]laintiff's condition would cause 'episodic flare-ups periodically preventing [her] from performing [her] job functions' that could occur up to 7 times a week

and last for up to an entire day." *Crowell*, 2013 WL 788087, at *2. The court determined that the certification could support a finding that the plaintiff suffered from a chronic serious health condition on the day she was absent from work despite an "arguably inconsistent" certification from the same physician that the plaintiff could return to work without restriction until she had shoulder surgery. *Id.* at *5. The court also concluded that the physician's certification that the plaintiff would have "episodic flare-ups periodically preventing [her] from performing [her] job functions" "could support a determination that Plaintiff was unable to perform one or more of the essential functions of her position" on the day she was absent. *Id.* The plaintiff's claims proceeded to trial; ultimately the court granted the defendant judgment as a matter of law upon concluding that the plaintiff had not made a timely request for FMLA leave under the defendant's leave of absence policy.

The Tenth Circuit affirmed but on different grounds: the evidence at trial did not support the claim that the absence in question was FMLA-protected. *Crowell v. Denver Health & Hosp. Auth.*, --- F. App'x ---, 2014 WL 3608698, at *4-5 (10th Cir. July 23, 2014). The trial evidence established a discrepancy between the leave requested by the plaintiff (intermittent) and the leave certified by the physician (continuous), and the employer had advised the plaintiff that she needed a new medical certification form if intermittent leave was required, but the plaintiff never provided one. *Id.* at *4. Furthermore, no medical testimony supported the plaintiff's claim that her absence was entitled to intermittent leave under the FMLA. Her physician testified that he did not think it was medically necessary for the plaintiff to be absent from work because of pain. *Id.* at *5. He also clarified that alt-

hough he certified that the plaintiff would have flare-ups of pain, he did not think she would be incapacitated because of the pain. *Id.* at *5 n.10. Although the physician's general testimony about the plaintiff's ability to work did not specifically address the absence at issue, the court concluded that the testimony refuted any reasonable inference that intermittent leave was necessary. *Id.* at *5. The absence of a medical certification supporting the plaintiff's claim that she was unable to perform her job due to a serious health condition (the certification was interpreted to require continuous leave) and the absence of evidence that a chronic condition prevented her from working (there was no medical evidence linking the plaintiff's severe chest pain on the day in question with her shoulder injury for which she was granted FMLA leave) were other bases on which the court upheld the judgment in favor of the defendant. *Id.* at *5–6.

Hansen has produced a medical certification that raises a material issue of fact as to his incapacity on the days at issue. The certification distinguishes this case from those relied on by FMG where the employee had no medical evidence supporting the entitlement to FMLA leave. Although Hansen's requested leave exceeds Dr. Post's estimated frequency and duration, as in *Schaar* where the requested leave exceeded the number of days certified, when the certification is combined with Hansen's own testimony that his depression prevented him from working on the days in question, Hansen has enough evidence to raise a material issue of fact that would allow a reasonable jury to find in his favor. And as in *Crowell*, Dr. Post's certification that Hansen would have episodic flare-ups periodically preventing him from performing his job functions could support a finding he was unable to perform one or more essential functions of his position on

the days he was absent. There may not be an abundance of evidence as to Hansen's entitlement to FMLA leave for the July 2011 absences, but there is enough to raise a material issue of fact. Thus, we reject FMG's argument that Hansen has no medical documentation to substantiate the medical necessity of his July 2011 absences; Dr. Post's certification in combination with Hansen's testimony can do just that.

Hansen's evidence raises a material issue of fact as to whether he was unable to perform the functions of his job because of his serious health condition on the days he was absent. Although Dr. Post's certification does not specifically cover the July absences, the certified need for intermittent leave could support a finding that Hansen's chronic serious health condition rendered him unable to work on the days in question. Our decision does not require FMG to go through a costly trial merely on Hansen's own say-so that his depression required him to be absent from work. In addition to his own testimony about his incapacity, Hansen has Dr. Post's medical certification that he has a serious health condition that will cause episodic flare-ups that prevent him from performing his job and make it medically necessary for him to be absent from work. Presumably, Dr. Post would testify in accordance with his certification. Whether a jury will credit Hansen's claims of incapacity due to his depression on the July dates remains to be decided. The jury can weigh Hansen's testimony against the medical certification and any testimony Dr. Post provides that may add to or detract from Hansen's claims, along with all the other evidence, to determine whether Hansen was entitled to FMLA leave for his July 2011 absences.

### III. Conclusion

The district court's grant of summary judgment is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.