**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0513-23

MATTHEW CALIO,

    Plaintiff-Appellant,

v.

CAMDEN COUNTY BOARD OF
CHOSEN FREEHOLDERS, d/b/a
CAMDEN COUNTY
DEPARTMENT OF CORRECTIONS,

    Defendant-Respondent.

_____

Submitted March 6, 2025 – Decided April 11, 2025

Before Judges Mawla, Natali, and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-1751-22.

William B. Hildebrand, attorney for appellant.

Office of Camden County Counsel, attorneys for respondent (Howard L. Goldberg, First Assistant County Counsel, on the brief).

PER CURIAM

Plaintiff Matthew Calio appeals from a September 22, 2023 order that granted defendant Camden County Board of Chosen Freeholders summary judgment and dismissed his complaint with prejudice. Having considered the record against the applicable legal principles, we reverse and remand for further proceedings.

I.

Since 2001, plaintiff has been employed as a corrections officer at the Camden County Correctional Facility. Due to his mother's terminal Alzheimer's and dementia diagnoses, beginning in 2017, plaintiff requested intermittent leave under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 to 2654, and the New Jersey Family Leave Act (NJFLA), N.J.S.A. 34:11B-1 to -16.

Defendant approved plaintiff's request for intermittent leave once in 2017 and twice in 2018. This appeal concerns events arising from plaintiff's final leave application, which defendant granted on December 4, 2018. In the medical certification appended to the relevant application, dated October 5, 2018, Paul Cohen, M.D., explained plaintiff's mother would experience flare-ups one time every four weeks, which would last for eight hours or five days per episode. Based upon Dr. Cohen's certification, plaintiff's employer approved his request

to take intermittent leave between December 12, 2018, and June 12, 2019. Under the terms of his approved intermittent leave, plaintiff was entitled to one instance of leave per month for a maximum duration of up to five days.

On February 1, 2019, plaintiff's supervisor, Lieutenant Charyetta Hinson, submitted a supervisor's staff complaint report recommending disciplinary charges against plaintiff. Specifically, Lieutenant Hinson explained in her report "[r]ecords indicate that [plaintiff's] approved intermittent Federal Family Leave covers [him] one . . . time a month with a duration of five . . . days. On January 6, 2019[, plaintiff] called out sick utilizing [his] second FMLA day during a [thirty-]day period. This occurrence violated the terms of [his] FMLA." That same day, Lieutenant Hinson submitted a second report recommending disciplinary charges against plaintiff due to his use of a FMLA leave day on January 28, 2019.

At her deposition, Lieutenant Hinson explained she understood plaintiff was entitled to a single instance of five continuous days of FMLA leave within a thirty-day period. After plaintiff's unexcused absence on January 6, 2019, Lieutenant Hinson stated she spoke with him and told him "he went over what was prescribed in the FMLA, and [she] explained to him that he wasn't in

3

compliance with the terms of his FMLA. That he should speak to [Human Resources (HR)] or his mother's doctor to get his paperwork fixed."

Shortly before Lieutenant Hinson issued her staff complaint report, she spoke with Lieutenant Peter Celeste from HR who informed her plaintiff had not submitted a recertification for FMLA leave. Lieutenant Hinson explained she recommended disciplinary charges against plaintiff not for taking FMLA leave, but "for violating the terms that [were] designated in his FMLA."

At his deposition, Lieutenant Celeste explained before any disciplinary charges were issued against plaintiff, he "asked [plaintiff] to provide an updated certification." Although Lieutenant Celeste testified plaintiff agreed to do so, he never submitted any such form.

At his deposition, however, plaintiff denied that defendant ever requested he provide them with an updated certification. Plaintiff explained he "was never advised to recert[ify]. What [he] was told was, you're getting charges served with suspension time. . . . [I]f they would have [come] to [him] and said: Hey, [plaintiff], just get this recert[ified], and everything is good. [He] wouldn't be sitting in this room right now."

On February 19, 2019, defendant issued two notices of minor disciplinary action against plaintiff. The first explained plaintiff would be suspended one day because

> [o]n or about [January 6,] 2019, [plaintiff] called out sick for [his] tour of duty using [his second] occurrence of FMLA during a [thirty] day period. [Plaintiff's] approved intermittent FMLA . . . states that [his] intermittent FMLA dated [December 12, 2018] through [June 12, 2019] is to be used only [one] time a month for a [five] day duration. [Plaintiff] exceeded [his] allotted FMLA days by using a [second] day during the [thirty-]day period, not in conjunction with the [first].

The second notice, which provided a similar explanation as detailed above, imposed a three-day suspension for plaintiff's unexcused absence on January 28, 2019.

Plaintiff filed suit in federal court "alleging four [c]ounts stemming from [defendant's] alleged violations of his federal FMLA and state NJFLA rights."[1] Subsequently, on March 26, 2019, Lieutenant James Richer wrote a letter to plaintiff informing him

> [y]ou have been notified by the [HR] Division to recertify your FMLA if you need more time than your doctor has requested, which you have failed to do. The [two] dates utilized that initiated the [s]taff [c]omplaints have been converted to sick days[,] and this matter has been officially closed.

---

[1] Plaintiff's federal complaint is not included in the record before us.

Lieutenant Richer further urged plaintiff to have his "approved FMLA time recertified by [his] doctor if [plaintiff] should need more time than that which [Dr. Cohen] has requested for [plaintiff]."  Two days later, Lieutenant Celeste wrote to plaintiff and explained "it appears that the circumstances described by the October 5, 2018 [c]ertification have changed significantly as far as the frequency of the number of leaves per month. . . .  [W]e are requesting a [r]ecertification from your [h]ealth [c]are [p]rovider within [fifteen] calendar days of your receipt of this letter."[2]

On August 6, 2021, the district court denied both parties' motions for summary judgment without prejudice.  Calio v. Camden Cnty. Bd. of Chosen Freeholders, No. 19-8393, 2021 WL 3464879, at *7 (D.N.J. Aug. 6, 2021). Rejecting plaintiff's contention "this is a discipline case, not a recertification case[,]" the district court noted "whether or not [defendant] asked [plaintiff] to recertify the frequency of his FMLA leave and provided him the required minimum of fifteen calendar days to do so before disciplining him is critical to determining whether or not [defendant] violated [his] FMLA rights."  Id. at *4. Citing the conflicting deposition testimonies of plaintiff and Lieutenant Hinson,

---

[2]  Plaintiff never obtained a recertification of his FMLA leave.

the court noted the issue of recertification was "a credibility issue that th[e c]ourt cannot resolve on summary judgment." Ibid.

After the district court requested additional briefing, however, on June 30, 2022, it dismissed with prejudice plaintiff's claims under the FMLA but declined to exercise supplemental jurisdiction over his NJFLA claims. Calio v. Camden Cnty. Bd. of Chosen Freeholders, No. 19-8393, 2022 WL 2357302, at *4 (D.N.J. June 30, 2022). First, the court concluded plaintiff was not entitled to injunctive relief regarding defendant's alleged "policy and practice . . . of strictly enforcing monthly frequency and duration limits on intermittent FMLA leave." Id. at *1. Rejecting plaintiff's argument "he was entitled to five days [of intermittent leave] to be used in any configuration throughout the month, even though he had been approved for one absence of up to five days per month[,]" the court again explained the matter was an issue of recertification and found any argument defendant violated the FMLA simply by disciplining employees who exceeded their intermittent FMLA allotments to be without merit. Id. at *1-2.

Second, the district court found defendant was entitled to summary judgment because even if plaintiff could prove defendant did not properly request a recertification before disciplining him, plaintiff "failed to show that he suffered any damages as a result." Id. at *3. The court declined to exercise

supplemental jurisdiction over plaintiff's NJFLA claims in part due to the fact the only remaining damages in the case would be for emotional distress, which are recoverable under the NJFLA but not the FMLA. Id. at *4.

The United States Court of Appeals for the Third Circuit affirmed the district court's dismissal of plaintiff's FMLA claims because "none of [defendant's] actions resulted in any harm to [plaintiff], [and] th[e Third Circuit], like the [d]istrict [c]ourt, lacks the ability to grant any relief to him." Calio v. Camden Cnty. Bd. of Chosen Freeholders, No. 22-2261, 2023 WL 3674664, at *4 (3rd Cir. May 26, 2023). Specifically, the court found: (1) because defendant withdrew plaintiff's discipline, he "suffered no loss in pay, nor did he lose any leave time"; (2) plaintiff lost no benefit by virtue of defendant converting the excess leave days he took into sick days; (3) "nothing in the record indicate[d] that [plaintiff's] use of FMLA leave was a negative factor in his performance reviews"; (4) plaintiff was not entitled to injunctive or declaratory relief because he failed to identify any policy or procedure that ran afoul of the FMLA; and (5) plaintiff's "argument that the case was dismissed as a sanction misapprehends the [d]istrict [c]ourt's reasoning." Id. at *4-5.

While plaintiff's federal appeal was pending, he filed the state court complaint at issue, in which he alleged defendant has "a policy and practice of

8

strictly enforcing the limits on leave set forth in its [d]esignation [n]otices.[3]  If employees exceed the frequency or duration of their approved intermittent leave even by a single day, they are subject to discipline, regardless of whether the subject absence is protected or not."

Due to defendant's alleged actions regarding his absences on January 6 and 28, 2019, plaintiff alleged defendant "interfered with, restrained, and otherwise deprived [p]laintiff of his right to intermittent NJFLA leave." Plaintiff sought:  (1) monetary damages, including his loss of earnings; (2) compensation "for the pain, humiliation, emotional distress[,] and other compensatory damages he sustained"; (3) punitive damages; (4) attorney's fees; (5) restoration of his FMLA leave days; and (6) "[a]n injunction, barring [d]efendant from disciplining employees for taking protected NJFLA leave, solely because that leave exceeds the frequency or duration limits of leave set f[o]rth in their [d]esignation [n]otice."  In its answer, defendant denied plaintiff's allegations and asserted various affirmative defenses.

---

[3]  A designation notice "informs the employee whether the FMLA leave request is approved; also informs the employee of the amount of leave that is designated and counted against the employee's FMLA entitlement."  U.S. Dep't of Lab., FMLA:          Forms,          Wage          and          Hour          Div., https://www.dol.gov/agencies/whd/fmla/forms (last visited March 26, 2025).

A-0513-23

Defendant later filed a motion for summary judgment under Rule 4:46-2(a), which plaintiff opposed. The motion maintained no material factual dispute existed and summary judgment was appropriate because defendant did not violate the NJFLA by requesting plaintiff provide a recertification. Specifically, defendant argued plaintiff's position that it was unlawful under the NJFLA for defendant to request a recertification from plaintiff, had "absolutely no basis in the statute, in the regulations[,] or in any case law."

Plaintiff contested defendant's claim that this case involved the issue of recertification and instead maintained "he was disciplined for taking FMLA [l]eave." Plaintiff further argued because the FMLA and NJFLA are different statutes, the court was not bound by the district court's conclusions and noted the fact that the district court declined to exercise supplemental jurisdiction over his NJFLA claim. Plaintiff also maintained his NJFLA claim should survive summary judgment because, unlike the FMLA, which requires economic damages, the NJFLA "permits emotional distress, economic relief[,] and other forms of non[-]economic relief." On this point, defendant's counsel represented at oral argument plaintiff had "absolutely" alleged he sustained damages with respect to emotional distress.

A-0513-23

Finally, plaintiff maintained defendant violated the NJFLA because it disciplined him despite the fact he had not used all his leave time permitted by the statute. Plaintiff argued "[e]mployees are entitled to [twelve] weeks of family leave under both statutes . . . . The employer cannot arbitrarily say, [o]kay, you're entitled to [twelve] weeks, but you're only able to take [two] weeks this month or [three] weeks next month."

The court granted defendant's motion for summary judgment, explained its decision in an oral opinion, and issued a conforming order that same day. Relying on Wolpert v. Abbott Laboratories, 817 F. Supp. 2d 424, 437 (D.N.J. 2011), the court first explained "FMLA and [NJFLA] cases are to be applied by the same standard and framework." While the court recognized the statutes differ in terms of the remedies they offer, it explained "you [cannot] get to the remedies unless you can show that there was a violation of either of the statutes." Thus, the court found there was no "violation [of] the [NJFLA] for the reasons that were placed on the record. And most particularly[,] for the reason that [the district court] stated in [its] opinion of June 30th of [20]22."[4]

---

[4] While it is unclear precisely what statement the court referred to from the district court's June 30, 2022 opinion, defendant's counsel quoted the following passage during oral argument:

II.

Before us, plaintiff essentially reprises his arguments made before the federal courts and the trial court and specifically argues the order dismissing his claims under the NJFLA should be reversed because "eligible employees are entitled to take [twelve] weeks of family leave: this is their statutory leave entitlement" and the "frequency of the leave doesn't matter; even if [plaintiff] took leave on three separate occasions [in January 2019], he would be entitled to additional leave, so long as his total [twelve]-week entitlement was not exhausted."

> Plaintiff's argument insists that an individual's FMLA leave allotment is always simply the number of days multiplied by the number of instances per month, and that the employee can take . . . that number of days as FMLA, irrespective of the approved number of instances per month. For instance, [p]laintiff's argument would mean that an employee who is entitled to four two-day absences per month may simply take off eight days that month in any configuration. The [c]ourt has already ruled, and repeats here, that this interpretation of the FMLA is incorrect. . . . Such interpretation would render the estimations made by doctors–which are made not simply in terms of the number of days, but in terms of the number of days per absence–meaningless.
>
> [Calio, 2022 WL 2357302, at *1.]

12

Plaintiff further contends defendant "seek[s] to impose rigidity by strictly enforcing monthly frequency and duration limits on NJFLA leave[,]" but "neither the statute, regulations, nor General Order 007[5] authorizes frequency limits on NJFLA leave." He disputes the court's reliance on the district court's decision for the proposition that "monthly frequency limits are okay," without discussing the "statute, regulations, or General Order 007, or cite any other binding legal authority supporting [its] conclusion."

Plaintiff continues to contend "an eligible employee is entitled to take [twelve] weeks of family leave in a designated [twelve]- or [twenty-four]-month, period . . . and the number of 'instances [of leave] per month' doesn't matter." According to plaintiff, because the NJFLA guarantees employees twelve weeks of family leave, employers "cannot impinge upon this entitlement by 'approving' a limited number of 'instances per month.'"

Relying on Hansen v. Fincantieri Marine Group, Inc., 763 F.3d 832 (7th Cir. 2014), plaintiff argues medical certifications are simply "'best estimates' concerning the frequency and duration of the employee's condition." Additionally, unlike the FMLA, plaintiff contends the NJFLA "does not require

---

5  General Order 007 reflects the Department of Corrections' policies and procedures with respect to the FMLA and NJFLA.

that the medical certification provide an estimate of the frequency of the required leave."

Because a designation notice is required only under the FMLA and not the NJFLA, plaintiff maintains "information in the [n]otice cannot be used to limit or otherwise abridge NJFLA rights." Additionally, plaintiff contends the purpose of the designation notice "is simply [to] advise[] the employee of the amount of time that will be counted against [their] total [twelve]-week leave entitlement."

Plaintiff argues defendant inappropriately disciplined him for his absence on January 6, 2019, "despite the fact [that was] his first day of family leave that month." That is, according to the December 4, 2018 designation notice, plaintiff was entitled to intermittent family leave "[one] time per month." However, the notices of minor disciplinary action "explain[ed plaintiff] was disciplined for 'using a [second] day [of leave] during the [thirty-]day period, not in conjunction with the first.'" Accordingly, plaintiff argues "[b]ecause January 6, 2019 was [his] first leave day that month, he should not have been disciplined, even under [d]efendant's . . . interpretation of the law."

A-0513-23

## III.

We review the disposition of a summary judgment motion de novo, applying the same standard used by the motion judge.  Townsend v. Pierre, 221 N.J. 36, 59 (2015).  Like the motion judge, we view "the competent evidential materials presented . . . in the light most favorable to the non-moving party, [and determine whether they] are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party."  Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)); see also R. 4:46-2(c).

If "the evidence 'is so one-sided that one party must prevail as a matter of law,'" courts will "not hesitate to grant summary judgment."  Brill, 142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) (footnote omitted)).  When the moving party has carried its burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.  . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Alfano v. Schaud, 429 N.J. Super. 469, 474-75 (App. Div. 2013) (alteration in original) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

A-0513-23

Under the NJFLA, "[a]n employee of an employer in this State subject to the provisions of this act shall be entitled to a family leave of [twelve] weeks in any [twenty-four]-month period upon advance notice to the employer." N.J.S.A. 34:11B-4. The Legislature enacted the NJFLA to prevent individuals from having "to choose between job security and . . . providing care for ill family members." N.J.S.A. 34:11B-2. It provides a right to take leave "without risk of termination of employment or retaliation by employers and without loss of certain benefits," N.J.S.A. 34:11B-2, if "the employee provides reasonable notice under the circumstances and avoids undue disruption of the employer's operations." DePalma v. Building Inspection Underwriters, 350 N.J. Super. 195, 212 (App. Div. 2002).

The NJFLA further provides employees may apply for intermittent family leave "[i]n the case of a family member who has a serious health condition." N.J.S.A. 34:11B-4(a); see also N.J.A.C. 13:14-1.5(d) ("An employee whose family member has a serious health condition is entitled to up to [twelve] weeks of family leave taken on a[n] . . . intermittent basis."). In order to qualify for intermittent leave under the NJFLA, "[a]n employer may require that any period of family leave for a serious health condition of a family member . . . be supported by certification issued by a health care provider." N.J.A.C. 13:14-

1.10(b). The Administrative Code further provides "the certification shall be sufficient if it states the approximate date on which the serious health condition commenced, the probable duration of the condition[,] and the medical facts within the provider's knowledge showing that the family member's health condition meets the criteria of a serious health condition." N.J.A.C. 13:14-1.10(b)(1).

While the NJFLA does not address the issue of recertification, the FMLA provides guidance on this subject. See Wolpert, 817 F. Supp. 2d at 437 ("Due to the similarity of the statutes, courts apply the same standards and framework to claims under the FMLA and the NJFLA."). Under the FMLA, an employer is permitted to periodically request a recertification for an employee's previously approved FMLA. 29 C.F.R. § 825.308. Generally, an employer may not request recertification more often than every six months, unless an exception applies. 29 C.F.R. § 825.308(b). Crucially, one such exception exists if "[c]ircumstances described by the previous certification have changed significantly (e.g., the duration or frequency of the absence, the nature or severity of the illness, complications)." 29 C.F.R. § 825.308(c)(2).

After a request to recertify, the employee must provide the recertification to their employer within the time period specified by the employer, which must

be a minimum of fifteen calendar days.  29 C.F.R. 825.308(d).  If the employee fails to provide a recertification within a reasonable time, then the employer may deny continuation of the FMLA leave protections until the employee provides a sufficient recertification.  29 C.F.R. § 825.313(c).

Finally, while the FMLA limits a plaintiff's remedies to economic damages and equitable relief, see 29 U.S.C. § 2617(a)(1)(A) and (B), the NJFLA permits the recovery of "damages to compensate for emotional distress."  See N.J.S.A. 10:5-17 ("In addition to any other remedies provided by [N.J.S.A. 10:5-1 to -50], a prevailing complainant may recover damages to compensate for emotional distress . . . ."); N.J.S.A. 34:11B-11 (explaining a plaintiff alleging a violation of the NJFLA is entitled to the "remedies provided in" N.J.S.A. 10:5-17).

Applying our de novo standard of review and the aforementioned legal principles, we conclude the court improperly granted defendant summary judgment.  First, we reject plaintiff's contention that "the NJFLA does not authorize recertification" as unavailing.  While the NJFLA does not expressly provide for recertification, General Order 007 references the process by specifically providing "[w]hen re-certification is requested . . . and the employee fails to return a fully completed . . . 'Family and Medical Leave Application' . . .

State Family Leave may be denied, delayed, or terminated." Dep't of Corrs., Medical and Leaves of Absence (FMLA-NJFLA-Military) 4 (rev. 2016). Additionally, the NJFLA mirrors the language of the FMLA, which allows for an employer to request a recertification. That is, both statutes state a medical provider's certification "shall be sufficient" in support of an application for intermittent leave provided it meets certain requirements. Compare N.J.A.C. 13:14-1.10(b)(1), with 29 U.S.C. § 2613(b). As noted, the FMLA further provides for a recertification process when, for example, "[c]ircumstances described by the previous certification have changed significantly (e.g., the duration or frequency of the absence, the nature or severity of the illness, complications)." 29 C.F.R. § 825.308(c)(2) (emphasis added).

In our view, it would be illogical to infer because the NJFLA does not explicitly provide for a recertification procedure, employers are therefore prohibited from requesting one. Indeed, the FMLA's recertification process exists precisely to address plaintiff's situation: that is, where an employee's intermittent leave needs change from those for which they were initially approved.

With respect to plaintiff's claim "neither the statute, regulations, nor General Order 007 authorizes frequency limits on NJFLA leave[,]" plaintiff fails

to consider that these sources do not forbid it either. Further, the NJFLA's provision requiring a medical professional to state "the probable duration of the condition[,]" N.J.A.C. 13:14-1.10(b)(1), would be rendered meaningless if employers could not enforce limits on employee's use of intermittent leave based on the information provided to them.

We reject plaintiff's reliance on Hansen and conclude that case supports our determination frequency limits on intermittent leave are permissible under the NJFLA. In Hansen, the plaintiff requested FMLA leave for depression and his physician provided a certification stating he would experience flare-ups with an estimated frequency of four episodes every six months with two to five days of incapacity for each episode. 763 F.3d at 834. He subsequently requested and was approved for FMLA leave on seven occasions. Ibid. His employer denied his eighth, ninth, and tenth requests for intermittent leave because the frequency exceeded what was listed in his medical certification. Id. at 834-35. Plaintiff's employer subsequently terminated his employment because he had accumulated too many absences and violated his employer's attendance policy. Id. at 835.

The Seventh Circuit "reject[ed] the argument that the estimates in the [medical] certification act as limitations on the frequency and duration of episodes for which an employee may be entitled to intermittent leave under the

FMLA." Id. at 843. The court noted, however, that the employer "should have sought recertification when the frequency of [the plaintiff's] absences exceeded what was estimated in his certification, rather than simply denying him leave." Id. at 842. Indeed, the Hansen court recognized "[i]f the certified frequency and duration were limits on the employee's entitlement to leave, there would be no need to request recertification when the employee's requested leave exceeded the frequency or duration stated in the certification; '[t]he employer could simply deny FMLA leave.'" Id. at 843 (alteration in original) (citation omitted); see also Brumbalough v. Camelot Care Ctrs., Inc., 427 F.3d 996, 1002 (6th Cir. 2005) (explaining although the FMLA permits an employee to take up to twelve weeks of leave, if an employer properly requests recertification and "the employee fails to provide the recertification and continues to take leave, [their] leave is no longer covered under the FMLA"). That rationale applies with equal force to the NJFLA.

We further reject plaintiff's argument he was entitled to intermittent leave on January 6, 2019, because that was his first use of intermittent leave that month. As noted, defendant approved plaintiff's intermittent leave request for one instance per month for a maximum duration of up to five days. Defendant interpreted once per month to mean "one occurrence per thirty-day period with

21

a duration of up to five days[,]" as opposed to once per calendar month. That interpretation is consistent with the timeframes in the FMLA, which repeatedly reference a thirty-day period rather than calendar months. See, e.g., 29 C.F.R. § 825.300(d)(6) (detailing an employer need not inform an employee of the amount of leave counted against their FMLA leave entitlement upon an employee's request "more often than once in a [thirty]-day period"); 29 C.F.R. § 825.308(c) (explaining "[a]n employer may request recertification in less than [thirty] days" under certain circumstances).

However, we are convinced a genuine factual dispute exists with respect to whether defendant requested plaintiff recertify his intermittent leave before it imposed the aforementioned discipline. In his response to defendant's statement of material facts, pursuant to Rule 4:46-2(b), plaintiff properly cited his deposition testimony in which he claimed he "was never advised to recert[ify]." As noted, Lieutenants Hinson and Celeste testified they advised plaintiff to recertify his intermittent leave prior to issuing the notices of minor disciplinary action.

If defendant asked plaintiff to recertify before imposing any discipline and he refused, then his absences on January 6 and 28, 2019 were not protected by the NJFLA. See 29 C.F.R. § 825.313(c). Alternatively, if defendant never

22

requested a recertification, as plaintiff testified, then his absences were protected under the NJFLA. Ibid. Because a material factual dispute existed regarding whether defendant requested plaintiff recertify his leave before imposing the aforementioned discipline, summary judgment should not have been granted.

We also note the district court recognized a material factual dispute existed with respect to whether defendant requested plaintiff recertify his intermittent leave before imposing any discipline. Both federal courts, however, dismissed plaintiff's claims under the FMLA because he did not incur any recoverable damages and was not entitled to injunctive or declaratory relief. As noted, the NJFLA permits recovery of emotional distress damages.

We note defendant has not raised nor have the parties briefed whether plaintiff's complaint should be dismissed because he may not be entitled to injunctive relief or did not sustain emotional distress damages, and we decline to address the issue in the first instance. Nothing in our opinion shall prevent defendant from renewing its summary judgment motion, nor plaintiff from filing any necessary applications. To the extent we have not specifically addressed any of plaintiff's remaining arguments, it is because we have concluded they are without sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

Reversed and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division